ELIAS BROWN *vs.* THOMAS STORM.

WASHINGTON
*March,*
1831.

H having contracted to purchase a lot of land of S, executed his notes to S for the amount of the purchase money, and S obligated himself by bond to convey the land to H on payment of the notes. H entered and took possession of the land, but did not pay the notes ; and consequently S did not execute a deed of the premises to H. After H had remained in possession of the land several years he sold his interest therein to D, who, two or three years after, sold and conveyed his interest in the land to B. S having afterwards recovered a judgement against B in an action of ejectment for the seizin and possession of the premises, B filed a declaration for betterments under the statute ; and it was held, that B might recover for all the betterments made by himself, and for those made by D, his grantor, provided D, at the time he purchased of H, supposed he purchased a title in fee, and did not purchase H's right, merely, under the contract made with S ; and that B could not recover for any improvements made by H, there being no failure on the part of S to fulfil the contract.

No recovery can be had in a declaration for betterments founded on an alleged want of title in the defendant, (the recovering party in ejectment.)

The statute which authorizes the defendant in ejectment to file a declaration for betterments, is not unconstitutional.

This was a declaration for *betterments*, containing four counts. The first was as follows : " Whereas the said *Storm*, in his action of ejectment against the said *Brown*, has recovered final judgement in said action for the seizin and possession of the 2d division lot drawn to the right of Jonas Coniff, original proprietor, being lot no. 12, in the 12th range of lots in Berlin, in said county ; nominal damages of one cent, and his costs. And now within forty eight hours next after the rendition of said judgement, the said *Brown* comes here into court, and, according to the statute in such case made and provided, files his declaration in an action of the case against the said *Storm*, on the 5th day of June, (said judgement having been rendered on the 4th day of said month,) for this, that William Dewey of said Berlin did, on the 18th day of October, A. D. 1820, for the consideration of five hundred dollars, paid him by the said *Brown*, by his deed under his hand and seal of that date, and duly witnessed, and delivered, and acknowledged by said Dewey, give, grant, bargain, sell and confirm unto the said *Brown*, his heirs and assigns, said lot of land forever. To have and to hold said granted premises, with all the privileges and appurtenances thereof to the said *Brown*, his heirs and assigns, to his and their own use forever. Which said deed the said *Brown* brings here into court ready to be shown. And afterwards, to wit, then and there, the said *Brown*, being purchaser of said lot of the said Dewey, in fee as aforesaid, and supposing his title to be good, entered upon said lot of land, and ever since has possessed and occupied the same, claiming in fee, and has made large and valuable improvements upon said lot, by clearing and fencing the land, and erecting buildings thereon ; all of the value of a large sum of money, to wit, the sum of five hundred dollars : and by said improvements said land is made better than it otherwise would have been, a large sum of money, to wit, the sum of five

WASHINGTON
March,
1831.

Brown
vs.
Storm
hundred dollars.   By reason of the premises the said *Storm* became, and is, liable to pay the said *Brown* as much money on demand as said land is made better by said improvements ; and in consideration thereof, after the rendition of said judgement, the said *Storm*, at said Berlin, on the fourth day of said June, promised to pay the same to the said *Brown* on demand."

The second count was similar to the first, except that it alleged *Brown, and those under whom he claimed to hold*, had made large and valuable improvements &c. ; and claimed a right to recover for the whole.

The third count was as follows : "And for this also,that whereas the said *Storm* has recovered a final judgement in ejectment as aforesaid; and the said *Brown* became purchaser of said lot of land, as aforesaid ; and supposing his title to be good in fee, and not knowing to the contrary, entered upon said lot, and has possessed, and occupied the same, claiming title to it in fee simple, as aforesaid. And the said *Brown* avers, that on the 18th day of May, 1809, the said *Storm* professed to be the *legal* owner of said lot of land, and then at said Berlin the said *Storm* contracted to sell said lot to one Gersham Harvill, who then and there contracted with said *Storm* to purchase the same, and therefor to pay Jonathan Ayers, the acting agent of said *Storm*, and one Abel Knapp, the following sums ; that is to say, one hundred and fifty dollars in cash, and three other sums of sixteen dollars and sixty seven cents each, payable in wheat, as by the promissory notes in writing of that date, executed by the said Harvill to the said Ayers and Knapp, will more fully appear.   And then and there the said *Storm* by his agent, aforesaid, promised the said Harvill that the said *Storm* was the legal owner of said lot, and had good right to convey the same in fee, and that the said *Storm* by a limited time would by deed in writing convey to said Harvill a good and valid title to said lot.   And the said Ayers and Knapp then and there executed their bond in writing, under their hands and seals, to the said Harvill, that said *Storm* should and would convey to him said lot as aforesaid.   And under this contract the said Harvill, afterwards, to wit, then and there, entered and took possession of said lot as purchaser of said *Storm*.   And the said *Brown* avers that the non-fulfilment of said contract was on the part of the said *Storm* in this, that the said *Storm* was not then, and since never has been, the legal owner of said lot, (unless he has acquired a title by the statute of limitations ;) that then, and during the possession of said Harvill, the said *Storm* had no right to convey said lot in fee to the said Harvill : and the said Harvill, having ascertained these facts, neglected to fulfil the contract on his part, denied the title of the said *Storm*, and utterly refused to receive a deed from him of said lot, or to consider himself in possession of said lot under said *Storm*, to wit, at said Berlin, ever after the year aforesaid, while the said Harvill was in possession of said

lot; which possession of said Harvill commenced on the day aforesaid, and terminated on the 3d day of June, A. D. 1817, when the said Harvill deeded said lot to Gersham Heaton and William Dewey; and then and there said Heaton and Dewey took possession of said lot, and continued the possession until the said Heaton deeded his undivided half of said lot to the said Dewey ; and after that the said Dewey continued the possession of said lot until he deeded to the said *Brown*, as aforesaid, who then and there entered, and has held possession of said lot ever since. And the said *Brown* avers that when the said Harvill took possession of said lot, as aforesaid, it was in its natural state ; that the said Harvill, the said Heaton and Dewey, the said Dewey, and the said *Brown*, have, during their connected possessions, made large and valuable improvements on said lot by clearing and fencing fifty acres of land, by setting out fruit trees, by tilling and manuring the land, by building a dwelling house, barn, and other buildings, on said land, all of great value, to wit, of the value of eight hundred dollars, of which the said *Storm* has had due notice ; and by said improvements said land is made *better* than otherwise it would have been, a large sum of money, to wit, the sum of eight hundred dollars ; and by reason of the premises, the said *Storm* became, and is, liable to pay the said *Brown* for said betterments; and in consideration," &c.

*Fourth count.* And for this also, that on the 18th day of May 1809 the said *Storm* falsely declared he was the legal owner of said lot of land, and had good right to sell the same ; and the said Harvill, not knowing to the contrary, then and there contracted with said *Storm* to purchase of him said lot for a price then and there agreed upon by the parties ; and at a day then future, the said *Storm* agreed to execute a deed to the said Harvill, thereby conveying to him, the said *Storm's* title to said lot ; which title was represented to be good and valid. And the said Harvill not knowing to the contrary took possession of said lot as purchaser under said contract, expecting to fulfil the same on his part, but never did, because he ascertained, that the said *Storm* was not the legal owner of said lot of land, and had no right to sell the same, and could not fulfil the contract on his part. After the said Harvill entered as aforesaid, he continued to possess said lot, and make improvements thereon, until he deeded said lot as hereafter mentioned. In 1812, he refused to receive a deed of said lot from the said *Storm* lodged in the hands of Abel Knapp Esq. as agent for said *Storm*, to deliver to the said Harvill, who then made known to said Knapp he would not take said deed, denied the title of the said *Storm*, and declared he would hold adversely to him. On the 3d of June, 1817, the said Harvill deeded said lot to Gersham Heaton and Wm. Dewey, who then entered and possessed said lot till the said Heaton deeded an undivided moiety of said lot to the said Dewey ; and the said Dewey continued to hold to the 10th of October 1820, claiming in fee adversely to said

Storm, when the said Dewey, for the consideration of five hundred dollars, expressed by his deed under his hand and seal of that date, duly witnessed, declared, acknowledged and recorded, and ready in court to be shown, did give grant, bargain, sell and confirm unto the said *Brown*, his heirs and assigns, said lot of land for ever.   To have and to hold said granted premises with all the privileges and appurtenances thereof, to the said *Brown*, his heirs and assigns, to his and their own use forever.   And then and there the said *Brown*, supposing he had a title in fee to said lot by virtue of said deed, entered and took possession of said lot, claiming the same in fee adversely to the said *Storm*.   And the said *Brown* avers that when the said Harvill first took possession of said lot as aforesaid, it was wild uncultivated land ; and the said Harvill, the said Heaton and Dewey, the said Dewey, and the said *Brown*, have during their connected possessions made large and valuable improvements on said lot, by clearing, fencing, tilling and manuring the land, and by building a dwelling house, barn, and other buildings thereon, of great value, to wit, to the value of eight hundred dollars; and by said improvements said land is made *better* than otherwise it would have been, a large sum of money, to wit, the sum last aforesaid ; and by reason of the premises the said Storm became and is liable," &c.

*Defendant's plea.*—"And now the said *Thomas* comes into court, defends &c., when &c., and for plea saith, that the said *Elias Brown* ought not to sustain his action against him, but ought to be precluded from the same ; because the said *Thomas* saith that on the 18th day of May, 1809, and a long time before, he claimed the said lot of land mentioned in said counts, by virtue of a deed from Jonas Coniff, the original proprietor of the right of which said lot is part, dated 10th day of June, 1790—and did on said 18th day of May, A. D. 1809, aforesaid, at said Berlin, by his agent, Jonathan Ayres, sell said lot of land to Gersham Harvill, then of said Berlin, and executed and delivered to said Harvill a bond for a deed of the same; and said Harvill then and the recontracted with, and purchased said lot of land of, said *Storm*, and then and there executed his four promissory notes for the purchase thereof, amounting in the whole to two hundred dollars : the whole of which sums fell due and payable to said *Storm* at different times, but all within four years next after said purchase of said lot ; which said deed to be executed to said Harvill on his payment, or securing the payment of said notes.   And the said Harvill on said 18th day of May, A. D. 1809, at said Berlin, entered into and took possession of said lot of land under and by virtue of said contract and purchase thereof, and occupied and improved the same until the third day of June A. D. 1817, when said Harvill sold and conveyed his said right and interest therein, and to the crops then growing thereon, to William Dewey and Gersham Heaton of said Berlin, who then and there entered and took possession of said lot of land under and by virtue of said sale from said

WASHINGTON
*March,*
1831.

Brown
*vs.*
Storm.

Harvill, and occupied and improved said lot until the 29th day of March, A. D. 1820, when said Heaton conveyed all his right therein to said Dewey, who thereby became sole possessor thereof, and continued his said possession and occupancy until the 10th day of October, A. D. 1820, when said Dewey sold and conveyed, by deed of warranty, his right, title, and interest in said lot to said *Elias,* who then and there entered and took possession of said lot under and by virtue of said contract and sale from said Dewey, as aforesaid, and hath ever since possessed and occupied said lot of land under and by virtue of the same; which is the same purchase by said *Brown* as mentioned in the several counts in said *Brown's* declaration. And said *Storm* saith, that said notes still remain in his hands and possession, in no part paid or satisfied. And the said *Storm* avers that he recovered his final judgement in said action of ejectment, mentioned in said *Brown's* declaration, by proving on the trial of said action that said *Brown* held and occupied said lot of land under him, said *Storm,* by virtue of his said contract and sale thereof to said Harvill, as aforesaid. And the said *Storm* avers that he hath at all times hitherto been ready to fulfil and perform the said contract made with the said Harvill, as aforesaid, on his part to be performed and fulfilled. And so the said *Storm* saith, that the said *Brown* got possession of said lot of land by virtue of said contract aforesaid, made between the said Harvill and the said *Storm,* as aforesaid. All which the said *Storm* is ready to verify. Wherefore he prays judgement, if, from having and maintaining his said action thereof against him, the said *Elias* ought not to be barred.

And for further plea in this behalf, by leave of court first had and obtained, the said *Storm* saith the said *Elias* ought to be barred, because he saith, at the time the said *Storm* sold said lot to said Harvill, and said Harvill purchased the same and took possession thereof, as set forth in said declaration, there was not any law of this state authorizing a person then taking possession of land, to file any declaration in manner and form as said *Elias* has filed his declaration aforesaid, and this he is ready to verify: wherefore he prays said *Elias* may be barred of his suit aforesaid."

*Plaintiff's replication.*—" And the said *Brown,* protesting that said *Storm* had no title to said lot by deed or otherwise, when he put the said Harvill into possession, for replication to the said *Storm's* two pleas in bar, above pleaded, says, that said pleas and matters therein contained are insufficient in the law to bar the plaintiff from having or maintaining his said action for the betterments made on said lot, and that by the law of the land he is not bound to make any answer thereunto. And for special causes of demurrer, the said *Brown* sets down the following: That neither of said pleas can have any application or bearing upon the two first counts in the plaintiff's declaration, who, by the first

Washington
*March,*
1831.

Brown
*vs.*
Storm.

section of the act in such case made and provided, is entitled to recover pay for his betterments made on said lot; that the first plea sets forth a different contract made with Gersham Harvill, to sell him said lot, from the contract described in the 3rd or 4th count of the plaintiff's declaration; and does not traverse or deny, or in any way avoid the contract, described in the 3rd or 4th count, made with the said Harvill for the sale of said lot; nor does said first plea deny, that the *nonfulfilment* of said contract described in the 3d and 4th counts of the plaintiff's declaration, was on the part of said *Storm,* and therefore the plaintiff is entitled not only to his own, but also to said Harvill's betterments made on said lot;—that said pleas are argumentative; they do not show that said *Storm* ever had *any title* to said lot during the possession of said Harvill, although said *Storm* might have had colour of title, and nothing else; —that there is no material fact set forth in said pleas which deserves notice, or an answer: if the whole story should be traversed and tried, it would not decide the merits of the case, but be a *mistrial.* All which the plaintiff is ready to verify; wherefore he prays judgement, whether from having and maintaining his said action he ought to be barred, and for his damages and costs."

Defendant joined in demurrer.

The county court rendered judgement for the defendant, and the case was brought by appeal to this Court.

After argument by *Baylies* for the plaintiff, and *Loomis* for the defendant,

Williams J., *delivered the opinion of the court.*—Mr. *Storm* having recovered in an action of ejectment against *Brown*, the latter has filed this declaration for betterments under the statute. The declaration consists of four counts; the plea professes to answer the whole declaration, and is demurred to. It would have been more advisable to have traversed the declaration, as the statute provides that if judgement is rendered for the defendant on demurrer, the plaintiff may file a new declaration within twenty-four hours. All the questions which have been made would have been raised on the trial of an issue to the jury. But as every question upon which the parties would request the opinion of the Court have probably been made in this case, we are disposed to decide it on the construction which must be given to the statute rather than on any critical view of the pleadings.

The statute was made for the purpose of giving relief in those cases where a person has honestly and innocently entered into the possession of land supposing his title was good, but which proves.

to have been defective. The action for *betterments*, as they are
termed in the statute, given on the supposition that the legal title is found to be in the plaintiff in ejectment, and is intended to
secure to the defendant the fruit of his labour, and to the plaintiff all that he is justly entitled to, which is his land in as good a situation as it would have been if no labour had been bestowed thereon. The statute is highly equitable in all its provisions, and would do exact justice if the value either of the improvements or land was always correctly estimated. The principles on which it is founded are taken from the civil law where ample provision was made for reimbursing to the *bona fide* possessor the expense of his improvements, if he was removed from his possession by the legal owner. It gives to the possessor, not the expense which he has laid out on the land, but the amount which he has increased the value of the land by his *betterments* thereon ; or, in other words, the difference between the value of the land, as it is when the owner recovers it, and the value, if no improvement had been made. If the owner take the land together with the improvements at the advanced value which it has from the labour of the possessor, what can be more just than that he should pay the difference. But if he is unwilling to pay this difference, by giving a deed as the statute provides, he receives the value as it would have been if nothing had been done thereon. The only objection which can be made is, that it is sometimes compelling the owner to sell when he may have been content with the property in its natural state. But this when weighed against the loss to the *bona fide* possessor, and against the injustice of depriving him of the fruits of his labour, and giving it to another, who by his negligence, in not sooner enforcing his claim, has in some measure contributed to the mistake under which he has laboured, is not entitled to very great consideration.

The statute gives the right to those defendants in the actual possession and improvement of land, who had purchased, supposing at the time of such purchase, the title to be good in fee. Without the fifth section of the statute, no person, entering into land under a contract with the owner, could recover for his improvements, for no such person could suppose they purchased a title in fee, when the purchase was to depend on fulfilling the contract made with the owner. To this effect were the decisions in the *6th and 12th Massachusetts Reports*, referred to in the argument.*
The fifth section, however, expressly provides, that such person shall

* 6 Mass. Rep. 307, 331 ; 12 do. 329,

Washington
March,
1831.

Brown
vs.
Storm

not recover for his betterments unless, in case of a mutual contract, the failure to fulfil was on the part of the owner. And in that case it gives to the person in possession under such contract the same right to recover for his improvements as if he had entered under a supposed title in fee.

The possession of a person under a contract, or as tenant, may become adverse to the person with whom he contracted, or to the landlord, by *an express disclaimer*. And when he makes such disclaimer, and denies to hold under his contract, or as tenant, and gives notice thereof to the owner, he then becomes a trespasser, and his possession is considered thereafter adverse.—*Blight's lessee* vs. *Rochester*, 7 *Wheat. Rep.* 535; *Willison* vs. *Watkins*, 3 *Peters's Rep.* 43. And although such person would be excluded from the benefit of the betterment act, by the express words of the fifth section, yet his grantee would be entitled to the full benefit of it, to recover for any improvements which he migh make, espe-cially if the relation between the owner and first possessor did not appear on record. For if it is true that such possession, continued for a sufficient length of time, would protect the person in posses-sion, and give him a title by the statute of limitations, as is consid-ered in the cases above referred to, *a fortiori*, it ought to entitle him, if he entered under a deed which he had reason to suppose conveyed a title in fee, to the value of his improvements.

From the statute which we have been considering the follow-ing principles are derived as applicable to the case under consid-eration : That in order to entitle a person to his betterments he must have entered into possession supposing that he had purcha-sed a title in fee—That no person who enters into possession un-der a contract with the owner comes within the first section of the statute, and is expressly excluded from the benefit of the same by the fifth section, and, therefore, cannot recover any thing for his betterments unless the owner fails to fulfil the contract on his part— That when a person does enter into possession under a supposed title he is not prevented from recovering pay for the betterments or improvements which he makes, because the person from whom he purchased had made a contract with the owner, unless he had knowledge of such contract, and purchased the right which his grantor had by virtue thereof. This will preclude a recovery in all cases where a person purchases of a mortgagee or lessee, when the relation appears of record, and, in general, in all cases where possession is taken under another by a recognition of his title, as no such person can suppose he purchased a title in fee—That in

Washington,
March,
1831.

Brown
vs.
Storm.

a declaration for betterments the title of the plaintiff in ejectment cannot again be brought in question, as that is determined in that action. And from these principles it results, that *Brown* may recover for all the betterments made by himself ;—that he may also recover for the betterments made by Dewey, who deeded to him, if Dewey, at the time he purchased of Harvill, supposed he purchased a title in fee : but if Dewey only purchased of Harvill his right under the contract which Harvill made with *Storm*, *Brown* cannot recover for those improvements ;—and that *Brown* cannot recover for any improvements made by Harvill, as he entered under a contract with *Storm*, and there was no failure on the part of *Storm* to fulfil.

The declaration contains counts against which there is no objection, which will entitle the plaintiff to a judgement; but in assessing the damages, none can be assessed on those counts which are founded on the alleged want of title in *Storm*.

The second plea was probably designed to being in question the constitutionality of the betterment act; but this question was not argued. It is true, all these acts are retrospective ; but I know of no objection against retrospective acts under the constitution of this state, or the United States. The obligation of the contract with *Storm* is not impaired, as the plaintiff can still enforce it against Harvill, if he can give the title which he contracted to give.

The judgement of the court is, that

> The plea is insufficient, and that the plaintiff recover his damages.