# David Sherman v. The A. P. Cook Company [Limited.]

*Public lands—Swamp-land grant—Subsequent transfer by govern-
ment—Ejectment—Compensation for improvements—
Drain taxes.*

| 98 | 61 |
| 98 | 638 |

| 98 | 61 |
| 113 | 457 |

| 98 | 61 |
| 117 | 314 |

| 98 | 61 |
| 123 | 183 |

1. The swamp-land act of 1850 passed the title to the lands there-
after identified as answering to its terms as of the date of its
passage.

2. A grant by the United States of land covered by the swamp-
land act of 1850, made after the passage of said act and before
the certification of the land to the State as required by the
act, is a nullity.

3. How. Stat. § 5384, which authorized the State Treasurer to
receive from the general government any moneys which had
been received, or which might thereafter be received, for any
swamp lands donated to this State, and the Commissioner of
the State Land Office to take an assignment of all bounty
land warrants received for any swamp lands sold in this State
since the passage of the swamp-land act of 1850, and release
the interest of the State in any lands sold or entered with
said warrants to purchasers or their assigns, did not authorize
the federal government to continue to receive land warrants
for lands the title to which, under the act, had vested in the
State, but, on the contrary, authorized the assignment of such
land warrants only as had theretofore been received.

4. How. Stat. § 7836, which gives to the defendant in an action
of ejectment compensation for buildings and improvements on
the premises recovered, erected or made by him or by any
person through whom he claims title, does not contemplate
that the expenditure for such buildings and improvements
shall be refunded to the occupant, but only that he shall be
allowed such a sum as shall equal the extent that such build-
ings and improvements have increased the present value of
the premises.

5. A defendant in ejectment, whose title to the land in contro-
versy fails by reason of its transfer under the swamp-land act
of 1850 to this State prior to the sale by the United States
under which defendant claims title, can recover, as a part of
his compensation for improvements, the expense of drainage,
incurred by way of payment of a drain tax imposed upon the
land.

Appeal from Clinton.* (Moore, J., presiding.) Argued October 4 and 5, 1893. Decided December 8, 1893.

Bill to quiet title, and to restrain the prosecution of an action in ejectment. Defendant appeals. Decree reversed. The facts are stated in the opinion.

*Fedewa & Walbridge,* for complainant.

*Norton & Brunson* and *Taggart, Knappen & Denison,* for defendant.

MONTGOMERY, J.   This suit is instituted for the purpose of having the complainant's title, derived through mesne conveyances from the United States, declared to be superior in equity to that of the defendant, derived through mesne conveyances from the State of Michigan.   Both parties, of course, concede that the original title was in the government of the United States, but it is contended on the part of the defendant that the title had passed from the federal government to the State prior to the attempted conveyance by the United States to the complainant's grantors.

On the 28th of September, 1850, Congress passed an act entitled "An act to enable the state of Arkansas and other states to reclaim the swamp lands within their limits."

The first section of the act was as follows:

"To enable the state of Arkansas to construct the necessary levees and drains to reclaim the swamp and overflowed lands therein, the whole of those swamp and overflowed lands made unfit thereby for cultivation, which shall remain unsold at the passage of this act, shall be. and the same are hereby granted to said state."

Section 2 of the act made it the duty of the Secretary of the Interior, as soon as practicable after the passage of the act, to make out an accurate list and plats of lands described as swamp and overflowed lands, and to transmit

the same to the governor of the state, and at the request
of the governor to cause a patent to issue to the state
therefor, and provided that on that patent a fee-simple of
said lands should vest in said state of Arkansas, subject to
the disposal of the legislature thereof. Section 3 provided
that, in making out the list and plats of the lands, all
legal subdivisions, the greater part of which was wet and
unfit for cultivation, should be included in the list. Sec-
tion 4 extended the provisions of the act to each of the
other states of the Union in which such swamp and over-
flowed lands, known and designated as aforesaid, might be
situated.

After the passage of the act, and on the 6th of August,
1853, Bush and Bailey, complainant's grantors, located at
the government land office the land in question, and obtained
a patent therefor on the 1st of November, 1856, which
patent was not, however, recorded until after the convey-
ance to Cook by the State hereinafter referred to. On the
29th of July, 1858, Addison P. Cook, defendant's grantor,
bought the land in question from the State of Michigan,
and received a patent therefor. The lands were certified
to the State, in pursuance of section 2 of the act of 1850,
on the 27th of October, 1853, and were subsequently, and
prior to the conveyance to Cook, patented to the State.
It also appears that the lands unquestionably answered to
the terms of the grant, as appears both by the testimony
of their actual state at the date of the grant and also by
the certification aforesaid. The precise question involved
is whether, after the passage of the act of 1850, and before
certification to the State, the title to the lands which it
should thereafter be ascertained answered to the terms of
the act remained in the government of the United States,
so that a conveyance from the government would defeat
the title of the State conveyed by the act of 1850.

In the case of *Busch v. Donohue,* 31 Mich. 481, it was

held that the title vested in all lands answering to the description in section 1 of the act of 1850' at least as early as the certification. This was as far as it was necessary to go in that case. There was language employed which gives some color to the claim that the title did not vest until the certification; but this was not necessary to the determination of the case, nor was it a question really involved, for under the facts of that case the certification preceded the grant to the individual by the federal government. The most that can be said, therefore, is that the case is not an authority sustaining the defendant's contention.

The question has, however, been before the Supreme Court of the United States frequently, and, as the question is one involving the construction of an act of Congress, its decisions are authoritative. The latest decision of that court which has come under our notice is *Wright v. Roseberry*, 121 U. S. 488. Mr. Justice Field in that case reviews the decisions, as well as the rulings of the Department of the Interior, in a very able and exhaustive opinion, and states the result of the decisions to be that the grant of 1850 was one *in præsenti*, passing the title to the lands as of its date, but requiring identification of the lands to render the title perfect; that the action of the secretary in identifying them is conclusive as against collateral attack, as the judgment of a special tribunal to which the determination of the matter was intrusted; but, when that officer has neglected or failed to make the identification, it is competent for the grantees of the state, to prevent their rights from being defeated, to identify the lands in any other appropriate mode which will effect that object.

In *Railroad Co. v. Smith*, 9 Wall. 95, it was held that the act of 1850 was a grant *in præsenti*, and that, in case of a failure by the Secretary of the Interior to certify the lists, the state might, notwithstanding this neglect, grant

a title, and that in such case parol evidence could be offered to show the character of the lands.

In *French v. Fyan,* 93 U. S. 169, it was said:

" This court has decided more than once that the swamp-land act was a grant *in præsenti,* by which the title to those lands passed at once to the state in which they lay. * * * * The patent, therefore, which is the evidence that the lands contained in it had been identified as swamp lands under that act, relates back and gives certainty to the title of the date of the grant."

We think it unnecessary to cite at length the numerous cases in which this question has arisen, as they are collated in the opinion of Mr. Justice Field in *Wright v. Roseberry.* The result of the cases is sufficiently apparent from the summary above quoted. It follows that the attempted grant by the federal government, after having parted with its title, must be treated as a nullity, unless the State, by its manner of dealing with the lands covered by the grant, has authorized the federal government to make conveyance which should be held to bar the title of the State. This is complainant's contention, and reliance is placed on the act of the Legislature of this State of February 14, 1853, the first section of which provides as follows:

" That the State Treasurer be, and he is hereby, authorized to receive from the general government any moneys that may have been received, or that may hereafter be received, for any of the swamp lands donated to this State, and that the Commissioner of the State Land Office be authorized to take an assignment of all bounty land warrants received for any swamp lands sold in this State since the act of Congress approved September 28, 1850, and to release the interest of the State in any lands sold or entered with said warrants to purchasers or their assigns." [1]

We think it is clear that the statute was not intended to authorize the federal government to continue to receive

---

[1] How. Stat. § 5384.

land warrants for lands which, under the act of Congress of 1850, had vested in the State. On the contrary, the assignment of only such land warrants as had theretofore been received was provided for. It follows that, the title having vested in the State on the 28th of September, 1850, the attempted grant by the federal government to the complainant's grantors must be treated as a nullity. The cases of *Dale v. Turner*, 34 Mich. 405; *Ives v. Ely*, 57 Id. 569; *Huggett v. Case*, 61 Id. 480,—are clearly distinguishable, as in each of these cases. the attempted grant by the federal government was prior to the act of the Legislature of February 14, 1853, and was confirmed by that act.

Both parties to the suit asked that the value of the improvements which the complainant is entitled to receive compensation for be determined in this proceeding. We have examined the record, and reach the conclusion that the value of the land without improvements would be $1,200, and that the increased value of the premises by reason of the improvements is $800. This estimate includes the expense of drainage, which was incurred by way of payment of tax imposed. It is contended that this expense ought not to be allowed, for the reason that the State owed the duty of reclaiming the land under the act of Congress of 1850, which vested title in the State. This is not a proceeding by the State. It is undoubtedly true that the State did not reclaim the land, and it is difficult to see just what remedy would be applied to compel it to do so. This being the situation, it cannot be doubted that if the occupant had in good faith joined with his neighbors, and made the improvement by drainage, he would be entitled to the amount of such expenditure. Nor do we think the case different because the neighborhood acted through the drain commissioner, and because the occupant, instead of going through the form of contesting against

the tax and making the expenditure himself, chose to recognize the proceedings and pay the tax. The land has been benefited by the drain, and the occupant has borne the burden. Equity requires that he should be compensated. It is probably true, as contended by the complainant, that the expense of making the improvement somewhat exceeded the allowance here made; but the statute (How. Stat. § 7836) does not contemplate that the expenditure shall be refunded to the occupant, but only that he shall be allowed such a sum as compensation for buildings and improvements as shall equal the extent that such buildings and improvements have increased the present value of the premises. Account should also be taken in this proceeding of the fact that the occupant has had the use of the premises up to the time of the commencement of this suit.

The defendant will be entitled to elect to abandon the premises at the value of $1,200, or to compensate the complainant for the increased value of the land by reason of the improvements in the sum of $800. The defendant will recover costs of both courts.

HOOKER, C. J., McGRATH and GRANT, JJ., concurred. LONG, J., did not sit.