LEMERAND *v*. FLINT & PERE MARQUETTE RAILROAD CO.

1. BETTERMENTS—REIMBURSEMENT—NOTICE OF OUTSTANDING TITLE.
   One who, having knowledge that the title to land to which he holds a quitclaim deed is outstanding in a railroad company, sets out fruit trees thereon, cannot, upon the company's taking forcible possession and destroying the trees, recover their value as betterments in an action at law.

2. SAME—REMEDIES—STATUTES.
   Whether, in view of the fact that the common law gave no right of recovery for betterments as against the owner of the title, and that the statute (3 How. Stat. § 7836) authorizes such recovery only by a defendant in ejectment, the forcible dispossession of one who had made improvements in good faith and without notice would leave him remediless at law; —*quære*.

3. SAME—WHAT CONSTITUTE.
   Whether, in any event, fruit trees could be considered "betterments," as against a railroad company which was obliged to remove them in order to make use of the land as a right of way,—*quære*.

Error to Monroe; Kinne, J. Submitted April 22, 1898. Decided June 7, 1898.

Case by James Lemerand against the Flint & Pere Marquette Railroad Company and the Monroe & Toledo Railroad Company for depriving plaintiff, by a forcible entry, of the value of alleged betterments. From a judgment for defendants, plaintiff brings error. Affirmed.

*Ira G. Humphrey* and *Willis Baldwin*, for appellant.

*Landon & Lockwood*, for appellees

MOORE, J. An examination of the accompanying plat will aid in understanding the situation. In 1873 about 36

acres of land was owned by Mr. La Fountain and Mrs. Toll as tenants in common. This land was divided into two nearly equal parts by Elm avenue, which runs nearly east and west. In April, 1873, William L. Webber, as trustee for the Flint & Pere Marquette Railroad Company, purchased the west 33 feet of that part of the tract lying north of Elm avenue. Mr. Webber's deed was recorded in May, and contained this provision: "That, if the same shall ever be occupied for the running and operation of a railroad, the same shall be duly fenced by the company." Soon after the deed was given, a railroad grade four or five feet high was made on the north two-thirds of the land bought, and a fence was built on the east line of the part graded. This strip of land was thereafter assessed either to Mr. Webber or the railroad company, and the taxes paid by them. This land was afterwards conveyed to the Monroe & Toledo Railroad Company. In 1888 the

plaintiff obtained a quitclaim deed of substantially the west half of the land lying north of Elm avenue, including the 33 feet which had been deeded to Mr. Webber. The plaintiff removed the fence, soon after he obtained the deed, back 33 feet, which took it to about the middle of the grade. The plaintiff gave a mortgage on his land in 1892, and another in 1895, in each of which his land was described as bounded on the west by land of the Flint & Pere Marquette Railroad Company. All his tax receipts read the same way, and he knew of the grade and of the talk about building a railroad on the land.

In the spring of 1893 the plaintiff set out on the 33-foot strip of land 55 plum trees and 30 pear trees. That spring he had been notified to move the fence back, because the railroad company desired to place tracks upon the grade. There is a dispute in the testimony whether this notice was given before or after the trees were set. This notice was repeated in the summer of 1894. On one Sunday in June, 1896, the company entered upon the 33-foot strip of land, destroyed the trees, and built its track. Soon thereafter plaintiff commenced a suit in the circuit court for Monroe county in an action of trespass, claiming damages for the destruction of these trees and the crops growing upon the strip of land, and for damages done outside of the strip of land. The circuit judge charged the jury in that case:

"The plaintiff will not recover damages in this action for the value of the permanent improvements and the trees destroyed in the right of way, or for deprivation of his right to have his damages assessed in an action of ejectment. As to these elements of damages, the plaintiff is left unprejudiced, the same not being in this case."

The jury returned a verdict as directed, for $65.40. No appeal was ever taken in that case. Afterwards this action was commenced.

The declaration contained two counts, in the first of which it is, in substance, recited that plaintiff, at the time of the alleged trespass, in June, 1896, was in actual and

peaceable possession of the premises, under a claim of title, and had been for more than six years; that within six years he had set out the trees in question; that on Sunday the defendants took forcible possession of said premises, and by that act deprived the plaintiff of his right to have the value of his improvements to the land assessed, as provided by section 7836, 3 How. Stat.; and reciting the destruction of the trees and the value of the improvements destroyed, and claimed damages in the sum of $2,000. The second count recited the forcible entry upon the premises, the destruction of the trees without notice to the plaintiff and without legal determination, and claimed damages in the sum of $2,000. To this declaration the defendants pleaded the general issue, and gave notice that the former suit was *res adjudicata* of this one. On the trial it was admitted that the property described in the declaration in the first case includes the 33 feet described in the declaration in this case; that the trees described in the two declarations are the same, and that the entry complained of is the same. The court held that there could be no recovery under the second count, but that proofs might be taken under the first count. The case was tried by a jury, who returned a verdict in favor of defendants. The plaintiff brings the case here by writ of error.

We do not think the court erred in relation to the second count. If it states a cause of action at all, it is in trespass, and is by the former suit *res adjudicata*.

The trial judge, among other things, charged the jury as follows:

"The plaintiff having been in peaceable possession of the premises in question for more than six years prior to the entry complained of, and having taken possession under color of title, there was no peaceable way known to the law to evict him from these premises except by an action of ejectment. In such an action he would have been defendant, and had his title failed him, as he now admits it has, he would have been entitled to recover from the plaintiff railway company in that action compensation for

such improvements made on the premises in question to the extent that such improvements would have increased the then value of the property. The entry complained of, and the retaining possession of the premises in question, deprived the plaintiff in this case of having his damages ascertained in an action of ejectment; and this suit is brought to recover such damages as he could have obtained had such action been brought, and he is entitled in this suit to recover those damages, providing he planted those trees in good faith, believing that he held the title to this property.

"If the plaintiff, in 1888, or soon thereafter, went into possession of this disputed piece of land 33 feet in width in good faith, believing that he had title, and if you further find from the evidence that he was in possession of the same under the same belief and good faith at the time he planted these trees, then I think plaintiff is entitled to recover in this cause. On the other hand, if you find from the evidence that, when the plaintiff planted these trees, he knew that the railroad company had a deed to this strip of land, and that they had paid taxes upon it ever since he (plaintiff) had made the purchase; and if you further find from the evidence that the plaintiff knew or had good reason to know that the railroad company still claimed to own this land; and if you find from the evidence that he planted these trees either for the purpose of improving his claim, or because he was willing to take the chances of holding the land,—then the plaintiff planted these trees at his own peril, and if now it transpires that his title has failed, and that the railroad company possessed the title, then the plaintiff cannot complain, and he cannot recover in this action. If you find from the evidence that, before the time of planting the trees upon this strip of 33 feet, plaintiff had notice that this land belonged to the Flint & Pere Marquette Railroad Company or its trustees, then he cannot recover in this action, and your verdict should be for the defendants."

The jury evidently found that plaintiff's possession of the land and the planting of the trees was not in good faith. It is difficult, judging from the record, to see how they could have found differently. It is now urged that the court erred in holding that if plaintiff had knowledge of the title of defendants when he went into possession of the land, and when he planted the trees, he could not

recover. It is said that the question of good faith is not involved, as plaintiff was in the actual and peaceable possession of the property for eight years before the alleged trespass occurred. This claim is based upon section 7836, 3 How. Stat., which reads:

"Whenever in any action of ejectment the plaintiff, or any one or more of the plaintiffs, if there be more than one, shall recover, or recover any undivided interest in the premises, the defendant or defendants shall be allowed compensation in proportion to such recovery for buildings and improvements on the premises recovered, erected or made by him or them, by any person through whom he or they claim title, to the extent that such buildings and improvements shall increase the present value of said premises: *Provided*, the defendant or defendants, or the person through whom he or they claim title, shall have been in the actual, peaceable occupation of the premises recovered for six years before the commencement of the action: *or, provided*, the same shall have been so occupied for a less time than six years under a color of title and in good faith."

Inasmuch as this was not an action of ejectment, it is difficult to see how the claim can be based upon this statute. It is urged that the provisions of the statute have been applied to a case that was not an ejectment case; citing *Sherman* v. *A. P. Cook Co.*, 98 Mich. 61. This was a case in equity to quiet title, where both parties to the litigation asked that the value of the improvements be determined. At the common law there could be no recovery as against the holder of the title for betterments. They became a part of the freehold, and passed by the recovery in ejectment. The plaintiff was placed in possession of the land in its improved form. Sedg. & W. Tr. Title Land, § 690. At law, relief is granted only when provided by statutory enactment. *Burkle* v. *Ingham Circuit Judge*, 42 Mich. 513. In this State, as we have already seen, it is granted when the plaintiff brings ejectment. It is not given as a personal judgment against the plaintiff, but its payment is made a condition precedent to his obtaining a writ of possession. 3 How. Stat. § 7839; *McCoy* v.

*Grandy*, 3 Ohio St. 463.   We know of no provision of
the statute which gives the maker of the betterments any
relief at law except in actions of ejectment.   The case of
*Webster* v. *Stewart*, 6 Iowa, 401, in many respects re-
sembles this one.   In that case it is held that, when the
rightful owner has obtained possession of the property
without resorting to an action at law, he is not liable in an
action at law for the value of improvements made by
another.   *Claussen* v. *Rayburn*, 14 Iowa, 136.   Relief
in these cases is granted in chancery, and, if it be said that
it is inequitable to allow the defendants to retain possession
of these premises without compensating the plaintiff for
his improvements, it is reasonable to inquire under what
circumstances would he be entitled in equity to compen-
sation.

"It is uniformly established, in the modern procedure,
that only a *bona fide* occupant of land will be permitted to
mitigate the plaintiff's claim  for  damages  and  *mesne*
profits by offsetting the value of his improvements; and
the same principle prevails in States which give the occu-
pant a lien upon the land for the surplus of the meliorations
above the damages and *mesne* profits.   The claim for bet-
terments is founded upon equitable grounds, and it would
be manifestly inequitable to the owner, and, indeed, a
highly dangerous policy, to make allowances for improve-
ments to one who made the expenditures with full knowl-
edge of the adverse claim.   Thus, it is said in Maryland
(*Linthicum* v. *Thomas*, 59 Md. 583): 'A claim for per-
manent improvements or betterments can be successfully
asserted only by one who is a *bona fide* occupant or pos-
sessor.'"   Sedg. & W. Tr. Title Land, § 694, and cases
there cited; 3 Pom. Eq. Jur. § 1241, and cases cited.

There is also another principle involved in the case.
Judge COOLEY, in his excellent work on Constitutional
Limitations ( 6th Ed., p. 476 ), quotes with approval lan-
guage used in *Brown* v. *Storm*, 4 Vt. 37, as follows:

"The statute is highly equitable in all its provisions,
and would do exact justice if the value either of the im-
provements or of the land was always correctly estimated.
The principles upon which it is founded are taken from

the civil law, where ample provision was made for reimbursing to the *bona fide* possessor the expense of his improvements, if he was removed from his possession by the legal owner. It gives to the possessor, not the expense which he has laid out on the land, but the amount which he has increased the value of the land by his betterments thereon; or, in other words, the difference between the value of the land as it is when the owner recovers it and the value if no improvement had been made."

Another text writer says: "The character of the improvement must be such as to make the land more valuable in the future for the ordinary purposes for which such property is owned and used." Sedg. & W. Tr. Title Land, § 699.

All these betterment laws proceed upon the theory that no one should be made richer at the expense of another. What is the situation as shown by the record? As early as 1873 this land was purchased to be used as the right of way for a railroad track. When he obtained title to it, the plaintiff knew the situation. A portion of the right of way was then fenced out. He saw fit to put upon the land fruit trees. The planting of these trees would doubtless be improvements upon a fruit farm, but, instead of being improvements which added to the value of the right of way for railroad purposes, they were harmful. It was necessary for the owner to remove them before he could use the property for the purpose for which he bought it. The so-called "improvement" did not inure to the owner's benefit, but was a damage to him.

Without passing upon the question of whether, in this form of action, if the proofs warranted it, a *bona fide* possessor of lands could recover against the rightful owner the value of improvements made by him, we are satisfied that, in any view of the case, the proceedings in the trial court were fully as favorable to the plaintiff as they ought to have been.

Judgment is affirmed.

The other Justices concurred.