CLAUSSEN AND KUEHL V. RAYBURN.

1. REIMBURSEMENT OF TAXES. The grantee of property sold for taxes may maintain an action after eviction against the real owner for the reimbursement of taxes paid thereon in good faith. Sections 458, 495, 503, 505 and 506 of the Code of 1851, and §§ 56, 58 and 61 of chap. 152 of the Laws of 1858, construed.

2. OCCUPYING CLAIMANT. A party out of the possession of real estate cannot maintain an action under chapter 89 of the Code of 1851 (article 1, chap. 97, Rev. 1860) against the holder of the legal, to recover the value of improvements made by him upon such real estate, following and reaffirming *Webster* v. *Stewart*, 6 Iowa, 401.

*Appeal from Scott District Court.*

TUESDAY, OCTOBER 21.

AT a tax sale for delinquent county and state taxes, held on the 2d day of February, 1846, lot No. 4 in Block No. 9 in the city of Davenport, was bought by Antoine Le Claire. He bought the same lot May 2d, 1847, at a tax sale for delinquent city taxes, receiving for said lot tax title deeds.

On the 30th day of January, 1850, said Le Claire sold and conveyed by warranty deed said lot unimproved to one John A. Rode, who conveyed, June 4th, 1850, the east half of said lot to Henry Kuehl, and January 3d, 1853, the west half of the same lot to H. R. Claussen. Said H. R. Claussen conveyed, September 8th, 1856, said west half to George C. Ditser and John H. Ditser; John H. Ditser and Henrietta Koch (formerly Ditser) sole heirs of George C. Ditser, deceased, conveyed, May 12th, 1860, to H. R.

Claussen, all their interest to said west half of lot No. 4 in block No. 9, and their claims for improvements made thereon, and taxes paid for the same.

Henry Kuehl took possession of said east half immediately after he had purchased the same, in June, 1850; erected on said lot large and valuable improvements, including a brick house, all of the value of $2,000; and paid taxes to the amount of $320.

. Rode, Claussen and Ditser, made improvements on the west half of said lot to the alleged value of $800, and claimed to have paid taxes to the amount of $337.86.

To recover the value of these improvements and the taxes thus advanced, the plaintiffs instituted this suit; averring that the taxes had been legally assessed against said property, and paid by them, and they had not been reimbursed or offered to be reimbursed; that said improvements were all made by them or their grantors respectively, in good faith, under color of title, without any knowledge of any defect in their title as purchasers of said premises; that the defendants, in an action of right, had recovered the title and acquired, under an execution or writ of restitution, the possession of said lot, before they, the plaintiffs, could file their petition to recover the value of the improvements above-mentioned, and the reimbursement of the taxes paid by them.

A demurrer to this petition was overruled so far as the claim for taxes paid was concerned, and sustained as to claim of compensation for improvements. Both parties excepted to this decision, and have appealed.

*Grant & Smith* and *Claussen* for complainants.

*Thompson* for respondents.

Lowe, J.— With regard to the claim for reimbursement of taxes under the circumstances stated in the petition, we

are satisfied that this right is substantially secured to the plaintiffs under §§ 458, 495, 503, 505 and 506, of the Code of 1851, and reaffirmed in the Session Laws of 1858, page 323, §§ 56, 58 and 61, and we shall therefore affirm the ruling of the court below on this point.

As to the claim for improvements, notwithstanding the logical force and perspicuity of the plaintiffs' argument, and his strong appeal to the principle of justice, we are inclined to adhere to the opinion expressed under like circumstances in the case of *Webster* v. *Stewart*, 6 Iowa, 401. The point ruled in that case was in substance this: "That a party out of possession of real estate, cannot sustain an action, under chapter 80 of the Code in relation to occupying claimants, against the holder of the legal title, to recover the value of the improvements made by him upon such real estate." The appellant upon this question insists that this is not a sound interpretation of that chapter, and that it does not limit in terms the right to recover for improvements to those in possession, and that such right is not lost. by yielding the occupancy of the same. The whole scope and tenor of the occupying-claimant law are too manifestly against this latter construction to require any special reference to its provisions to show its error. Indeed, the plaintiff's petition seems to have been framed upon the idea that the construction given by this court in the case referred to was the true one; and hence an excuse was attempted to be given for not commencing this suit before possession of the premises was lost, to the purport that the defendants had obtained possession under their execution before they could file their petition to recover the value of their improvements, and therefore a court of equity ought to entertain their complaint, and afford the requisite relief.

As was stated in the case of *Webster* v. *Stewart*, special cases might arise where a court of equity would decree compensation for improvements to a party out of posses-

sion. We suppose, for instance, if after a recovery in an action of right, the plaintiff should, by fraud or violence, suddenly possess himself of the premises, without the intervention of his writ, the party thus dispossessed, entitled to the benefits of the occupying-claimant law, might in obedience to the principles of common justice have the relief in equity which the said law affords to the actual occupant by the special proceedings which it authorizes. But no such case as this, or one that is equivalent thereto, is made by the plaintiffs in their petition. They not only fail to bring themselves within the requirements of the occupying-claimant law, but they fail to state any facts which would enable the court in its equitable jurisdiction to afford relief.

The excuse which the plaintiffs give (the purport of which we have already stated) for not seeking their remedy under the statute in time, is not only too vague and unsatisfactory for a court of equity to accept, but it is unreasonable. We can scarcely imagine a state of case where the defendant would not have time to file his petition for compensation for improvements in the period that usually elapses between the rendition of a judgment in an action of right, and the suing out of a writ of restitution under it. Such a case might arise, but it would be under very peculiar circumstances, and these circumstances should be stated, so that the Chancellor could form some opinion as to the plaintiff's right to relief.

Still, counsel insist that possession really has nothing to do with the question of compensation for improvements; that the claim of a *bona fide* purchaser under such circumstances is founded upon the clearest natural equity, and that such a claim, under the rules of the Roman or civil law, would be entertained and allowed, whether the party was in or out of possession; that the rules of the civil law ought to obtain in this court in cases of this description;

that they have the support and sanction of such names as Joseph Story, Pothier, Grotius, Puffendorf, Rutherford, and even Jeremy Bentham, the great English philosopher, and other ·distinguished jurists, for reasons which they claim to be founded upon common honesty, and the highest justice. On the other hand, it is admitted that the rules of the common law would ignore such a claim, and these rules have also great names in their advocacy and support; among them is included that of Chancellor KENT, and other lawyers of known celebrity. But we suppose it unnecessary to advert now to some of the reasons, plausible and cogent as they are, upon which the common law rules are founded. It is enough for us to know that the legislature of this state has spoken on this subject, and that in its wisdom it has furnished a law which in its provisions relaxes the sternness and technical policy of the common law, whilst it modifies and confines the more liberal rules of the civil law to certain fixed boundaries. By this statute law which necessarily takes the place of all other law on the same subject, we must be governed. In the absence of such a law, we would be at liberty to elect between the civil and the common law rules, in which event the writer of this opinion is free to confess his preference for the "moral beauty" of the former, rather than the stern rigor of the latter, as touching the particular question before us, especially as our whole system of remedial jurisprudence is verging towards it, and making use of some of its formulas and rules. As at present advised, we are inclined to affirm the judgment below.

Affirmed,