## No. 9227.

### LOUIS FISHEL VS. ARMAND MERCIER.

Where a tax-sale has been declared a nullity, the purchaser at such sale is entitled to reimbursement of the capital, interest and penalties he has paid, unless where the assessment of the property was radically defective or other essential legal requisites not complied with, in which last case only the principal and interest of the taxes paid can be recovered.

Whatever presumptions in favor of tax deeds may attach under the provisions of the Constitution, they have no application to tax-deeds which have been decreed null and void. In order to recover penalties paid under a void tax-sale, the plaintiff must prove the validity of the assessment, and having failed to make such proof, his claim to that extent is non-suited.

APPEAL from the Civil District Court for the Parish of Orleans. *Tissot*, J.

*Braughn, Buck & Dinkelspiel* for Plaintiff and Appellant.
*F. Michinard* and *C. McRae Selph* for Defendant and Appellee.

The opinion of the Court was delivered by

TODD, J.   The plaintiff purchased at tax-sale, certain real property of the defendant, situated in the city of New Orleans. After his pur-

chase and the confirmation of his title by the State Auditor, he instituted a suit in the U. S. Circuit Court for the possession of the property.

The result was that the tax-sale was decreed a nullity, and he failed to get the property.

Thereupon he instituted the present action to recover the taxes, penalties, costs, etc., he had paid out as the price of the property at this illegal sale.

The answer of the defendant, who is the original owner of the property, is substantially the general issue and the averment that he was not at all benefited by the sums expended by the plaintiff, and that he, plaintiff, had no right to demand restitution of him for the same.

From a judgment rejecting his demand the plaintiff has appealed.

We see nothing in this case to distinguish it from several others, wherein the present court has held that parties in *consimili casu* were entitled to recover from the owner of property, whose taxes they had paid, the amount of the same.

The right to restitution results from the fact that it is the duty of every citizen of a State to contribute to the payment of the lawful expenses of the government, and the taxes assessed against him represent his proportion of such required contribution, and if he fails to discharge this duty and suffers another to make the payment for him without realizing any consideration for his disbursement, that he can look to the delinquent taxpayer and owner for reimbursement.

It is not claimed in this instance, that the property in question was exempt from taxation; nor that it was not regularly subject to assessment during the several years that he, defendant, failed to pay the taxes. The defendant, however, insists that there is no sufficient proof in the record of the assessment of the property and of the amount of taxes due thereon, and that plaintiff should have produced the original rolls or abstracts therefrom to establish such facts.

In the deed of the tax-collector to the plaintiff, we find a full recital of the proceedings, under which the sale was made, that the assessment was in the name of the owner, the adjudication of the property first to the State, the amount of taxes assessed and due for each year, the statement of the penalties, costs, etc. This deed was received in evidence without objection, and was sufficient proof of the facts recited particularly, there being no opposing evidence offered and no issue raised touching the said recitals.

In cases where the assessments were shown to have been absolutely void in fixing the amounts to be reimbursed to the purchaser, we have not allowed him the penalties, costs, etc., for the reason that they were

incurred or charged in proceedings absolutely null for want of a legal assessment. Stafford vs. Twichell, 33 Ann. 520; Hopkins vs. Daunoy, Ib. 1423; Davenport vs. Knox, 34 Ann. 407; Hickman vs. Dawson, 35 Ann. 1086.

In the case, however, of Wederstrandt vs. Frehan, 34 Ann. 705, which was a case identical with this, where the sale had been annulled because made during the time when tax sales were prohibited under under the provisions of Act 7, Extra Session of 1875, the taxes, penalties, etc., paid were re-imbursed the purchaser. In our judgment we shall follow that precedent.

We quote from that decision to show the reasons on which it was founded.

"The title of an act to relieve delinquent tax-payers from the payment of penalties in certain cases" is sufficiently broad to include the cases in which delinquent tax-payers would pay the principal on the amount of their taxes on or before the 1st of November, 1875, to whom in such cases, all interest and penalties would be remitted. * * * As it appears from the record that plaintiffs made no effort to settle their taxes on or before the 1st of November, 1875, on the property, the ownership of which they claim not to have been divested by the tax sale, they are not entitled to the benefits conferred by the Act of 1875 and are bound to defendants for all costs and penalties to which the property became liable under the very legislation invoked by them."

The sale of the property in that case was made on the 25th of October, 1875, and the adjudication to the State in this bears date the 30th of August, 1875; and in this case, as in that, there is no proof that defendant owner of the property made any effort to settle the taxes on or prior to the 1st of November, 1875.

It is argued that, in no event, can the taxes and penalty for 1874, and the taxes of 1875 be recovered. The adjudication to the State was in part for the taxes for 1874, and as no offer of settlement as before stated was made by the owner within the time prescribed by Act 7 above referred to, the penalties attached and were paid by the plaintiff and also the principal of the taxes for 1875—no penalties therefor having been incurred—the taxes for which (the last year) were overdue when the deed was made to the plaintiff on the 15th of May, 1876; and we cannot see why the plaintiff is not entitled to recover for these years, as well as for the previous years.

Among the items that go to make up the total sum claimed by plaintiff, are the commissions, costs, etc., attending the tax sale. As this sale was a nullity, and the adjudication to the State made against a

Fishel vs. Mercier.

prohibitory provision of law, the defendant cannot be saddled with these charges and plaintiff has no right to recover them. They amount to $175.96, taking this amount from the total sum claimed, it leaves a balance of $2306.75, for which plaintiff is entitled to judgment.

The plea of prescription cannot be maintained. The demand is subject to the prescription of ten years.

We cannot, however, recognize the privilege claimed by the plaintiff, resulting, as alleged, from subrogation to the State's privilege by virtue of the payment by him of the taxes on the property. Such claim is not embraced in any of the provisions of Art. 2161, C. C. declaring the conditions under which subrogation takes place. Legal subrogation does not result from the payment of a privilege debt, when, at the time of the payment, the party making it has no privilege or mortgage on the property and is without interest otherwise. Succession of Erwin, 16 Ann. 132; 12 Ann. 41; 13 Ann. 52.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be annulled, avoided and reversed; and, proceeding to render such judgment as should have been rendered, it is further adjudged and decreed that plaintiff recover of the defendant twenty-three hundred and six dollars and seventy-five cents, with legal interest from the 15th of May, 1876, until paid, and that the claim of a privilege upon the property set up in the petition be rejected, defendant to pay costs of both courts.

---

## DISSENTING OPINION.

BERMUDEZ, C. J. This is apparently a suit to recover against the defendant a personal judgment for a sum of money which the plaintiff alleges has satisfied taxes and penalties due on defendant's property.

The defense is no cause of action, the general issue, prescription, that the amount did not enure to defendant's benefit, etc.

In reality it is an action for the repetition of the price paid for the purchase of property, the title to which was annulled. The claim is urged by the evicted purchaser, not against the party to whom he has paid the price, but against his vendor's author.

The facts are that the property was adjudicated on August 30, 1875, to the State, and afterwards, on May 15, 1876, as the property of the State to plaintiff.

Plaintiff's pretensions to the ownership of the property were twice repelled as well by the State as by the Federal judiciary.

It does not appear that the State was a party to the suit in which it is claimed that the sale to her was a nullity. Until the title to the State has been annulled so as to conclude the State, the title stands in her name.

Neither does it appear that the inscription of the title to the State was cancelled from the Conveyance office.

The plaintiff sues therefore as an evicted purchaser. His claim should have been urged against the State before the legislature, and not against her alleged author.

The defense of no cause of action was well founded and should have been sustained.

But taking the action to be one for the recovery of an amount voluntarily paid by the plaintiff to disencumber defendant's property from several years taxes due on it, how can the plaintiff be permitted to ask a personal judgment against the defendant for the reimbursement of that amount, when it is considered that a delinquent taxpayer is not *personally* liable for the taxes due on his real estate, and that such taxes can be satisfied when due, only out of the proceeds of the property on which the same are assessed and on which the law allows a lien to both the State and to municipal corporations, to whom the same may be due.

At the date of the adjudication, the Act of 1872, No. 73, which authorized the collection of taxes out of any property of the delinquent, had been amended.

Act No. 13 of 1876, p. 11, E. S., which became a law, from and after its passage, early in *March*, was to the effect that all taxes due and unsettled, or to become due, were secured exclusively by a lien and privilege on the property assessed.

The object of that act was formally to make claims for taxes, *real claims only*, by preventing them from being urged *in personam*.

This was made apparent by Act No. 34, p. 56, E. S. 1877, which limited the lien of the State and city to the property assessed, and prohibited sheriffs and constables from executing writs for taxes on any other property.

In May, 1876, the State had only a right of action *in rem*, although bound to proceed contradictorily with the owner of the property. In the absence of the lien, secured by registry, the State could not have brought a personal action against the defendant.

When the plaintiff paid the sum, he was not conventionally subrogated by the State, to the lien, which would have secured the pay-

ment of the taxes, etc., had the same been legally due, in case of the nullity of the sale.

Plaintiff was not a creditor of the defendant with privilege or mortgage, or even an ordinary creditor of his. He had no interest at stake which could have subrogated him legally to the rights of the State, when he paid the amount.

There was no law then in existence transferring such lien on such payment.

If plaintiff became a creditor when his title was annulled, he only acquired the claim or rights which the State could have exercised. The State could not, assuredly have proceeded *in personam,* for the obvious reason that delinquent tax-payers were not *personally* liable for taxes then due by property belonging to them. One is personally liable only where any property of his can be subjected to the payment of the claim. The Act of 1876 made the property only, not the owner, liable for the tax assessed and due.

If plaintiff acquired any claim, it would be one *in rem* against the thing. The proceeding *in rem* implies the existence of a lien or encumbrance on the property proceeded against. How could he exercise such a claim, when he acquired no lien and has none on the thing?

Plaintiff stands in the predicament of one who pays a creditor whose claim affects real estate transferred to a third party who did not assume the debt due that creditor. As the party paying could not recover a personal judgment against the third party, who was not liable personally, so the plaintiff here cannot recover such judgment against the defendant who was not personally bound. 24 Ann. 29; 6 R. 407.

Plaintiff has attempted a speculation *lucri causa* and has acted at his risk and peril. His remedy, whatever it be, is not in the present action against the defendant in this case. An evicted purchaser never was recognized the right to be reimbursed by the defendant, the purchase price paid to the seizing creditor who had a right of action *in rem* only.

The conclusions announced in the opinion of the majority are not supported by the decisions in the cases of Wedderstrand vs. Freyhan, 34 Ann., and Hopkins vs. Daunoy, 35 Ann., and other cases in which the purchasers at tax sales, subsequently annulled, recovered from the delinquent tax-payers restitution of the amounts paid by the purchasers for taxes, penalties, etc. The mere reading of the opinions in

those cases shows that they presented facts and circumstances entirely different from the case at bar. They cover all cases in which the restitution of taxes, costs, etc., by the delinquent, was made the condition of recovering possession of the property. In this case the owner was never divested of his possession, and the purchaser was defeated in his attempt to gain possession, and his purchase annulled.

The record contains no evidence that the taxes which he claims to have paid were due by the defendant, or had ever been legally assessed against his property.

If it be true that the property was validly adjudicated to the State on August 30, 1875, it belongs to the State at this date. The judgment annulling the sale by the State to the plaintiff, did not divest the former of her title to the property. It merely placed things in the condition in which they stood prior to the adjudication to plaintiff on May 15, 1876; in other words, it annulled the adjudication to plaintiff, nothing less, nothing more.

It is manifest that, were the defendant now to pay the plaintiff the amount which he claims, that payment would not divest the State of her title to the property if she acquired any. The defendant would then have lost his property, and besides, the amount claimed as taxes due on it, and for which it was apparently confiscated for the benefit of the State.

The judgment appealed from should be affirmed.

POCHE, J. concurs in this opinion.

---

### ON APPLICATION FOR REHEARING.

FENNER, J. In this case while adhering to our conclusion of defendant's liability, for the principal of the taxes and the interest from date of payment, under the equitable principles of Hopkins vs. Daunoy, regardless of the question of the validity of the assessment, yet his liability for prior interest and penalties, does depend directly on that question; and we grant a rehearing restricted to the question as to whether the record furnishes sufficient evidence to sustain the demand for such interest and penalties. A rehearing thus restricted, is therefore granted.

POCHÉ, J. Without waiver of the views contained in the opinion of the Chief Justice, I concur in this decree.

---

### ON REHEARING.

FENNER, J. The decision in Hopkins vs. Daunoy, 33 Ann. 1423, followed in this case, rests upon equitable principle that all property, not exempt, is legally bound to bear its quota of equal and uniform

Fishel vs. Mercier.

taxation; that, although the assessment and other proceedings be void and the recovery of the tax levied thereunder be thereby temporarily defeated, yet that under the power of reassessment, the State and municipalities may, and in the performance of their duty, should take new and valid proceedings for the collection of the tax; that therefore, when the purchaser at a void tax-sale has actually paid the taxes he has relieved the property of a charge which, though not legally operative at the moment, was subject to immediate and valid reimposition, and has thus conferred upon the owner a direct benefit, which equity will not permit him to enjoy at the expense of the purchaser who has paid.

The manifest justice of this rule, approves the wisdom of its adoption and the propriety of its enforcement under all circumstances. It is calculated to repress the vicious tendency of property owners to evade, on technical grounds, their just share of the burdens of government, and to aid the State and subordinate taxing authorities in the collection of their limited and sorely-needed revenues.

But, as we said in the case referred to, the rule has no application to the penalties paid where the assessment was null. The owner was not liable for such penalties and could not be made liable therefor by any subsequent proceeding.

Therefore, the right of the purchaser to recover these must depend upon the fact whether or not the assessment was valid. If valid, the penalties were due, although the subsequent proceedings for the sale were defective and illegal.

The plaintiff in this case has furnished no proof of the validity of the assessment except the recital of the tax-deed.

The constitutional provisions which attach certain presumptions to tax-deeds have no application to deeds which have been decreed null and void, as in this case.

It was, therefore, incumbent on the plaintiff to establish the validity of the assessment as a condition precedent to his right to recover penalties. Having failed to do so, he must be non-suited as to that portion of his demand.

It is therefore ordered and adjudged that our former decree herein be amended by reducing the principal of the judgment from $2306.75 to $1455.50, and by rejecting plaintiff's demand for the difference as in case of non-suit, and that, in all other respects, our said decree remain undisturbed.

### CONCURRING OPINION.

BERMUDEZ, C. J.   I concur in that portion of the judgment on the rehearing which amends the judgment previously rendered, so as to relieve the defendant from part of the claim, but I adhere to my dissenting opinion, as the other part of the judgment which allows the claim, which I think should not be recognized at all.

Mr. Justice Poché concurs in this view.

Mr. Justice Todd and Mr. Justice Manning concur in the decree refusing the rehearing, so far as it leaves the previous judgment undisturbed, but dissent from it in other respects.