## ADELBERT P. NICHOLS, Appellant, v. LAMON D. H. RUSSELL, Respondent.

### Kansas City Court of Appeals, December 6, 1909.

1. **TAX SALE: Fraudulent Combination.** An understanding among bidders at a tax sale not to bid against a certain purchaser thereby preventing competition in the bidding is fraudulent and renders a deed made to the purchaser void.

2. ———: ———: **Invalid Title: Lien of Purchaser.** In the absence of a statute the purchaser of an invalid tax title is regarded as a volunteer and cannot recover taxes for the collection of which the sale was made, nor for taxes subsequently paid by the purchaser.

3. ———: ———: ———: ———: **Taxes Refunded Purchaser: In Equity.** But where the owner goes into equity to cancel the sale, equity will compel him to refund the taxes paid, where the purchase was made in good faith but is invalid for mere irregularity.

4. ———: ———: ———: ———: **Refunding Taxes: Charter of Kansas City.** Article 5, section 59, revised charter and ordinances of Kansas City (1898) providing for the repayment to the purchaser of money paid by him where the sale is adjudged invalid has no application to a sale declared invalid for fraud.

5. ———: ———: ———: ———: **Fraudulent: Purchaser: Prepayment of Taxes.** Where a tax sale is set aside on the ground of fraud equity will not require the owner to reimburse the fraudulent purchaser for money expended by him in payment of taxes upon the property.

Appeal from Jackson Circuit Court.—*Hon. H. L. McCune,* Judge.

AFFIRMED IN PART AND REVERSED IN PART.

*A. S. Marley* for appellant.

(1) The sale was void on account of combination of appellee with other bidders to prevent competitive bidding. Merritt v. Poulter, 96 Mo. 237; Durfee v. Moran, 57 Mo. 379; Neal v. Stone, 20 Mo. 296; Worten v.

Hinckle, 20 Mo. 290; Brown v. Hogle, 30 Ill. 144; Singer
Mfg. Co. v. Yarger, 12 Fed. 487; Slater v. Maxwell, 73
U. S. 276; Herndon v. Gibson, 20 L. R. A. 545; Ker-
wer v. Allen, 31 Iowa 578.   (2) In the absence of a
statute, a purchaser at a void sale cannot recover taxes
lawfully assessed.   Railroad v. Alexander, 49 Ark. 192;
Harper v. Rowe, 53 Cal. 238; Greenwood v. Adams, 80
Cal. 74; Stevens v. Williams, 70 Ind. 536.   (3)  Neither
has he a right of subrogation to the rights of the city,
unless such right is conferred by statute.   Croskery v.
Bush (Mich.), 74 N. W. 464; Blackwell v. Bank, 63 Pac.
47.

*Laughlin & Kenworthy* for respondent.

(1)  Was the sale fraudulent?  We contend that
there was not sufficient evidence of any combination
at the sale among bidders and especially is there no evi-
dence connecting the defendant, Russell, with any such
combination, and an entire lack of evidence as to what
took place at the sale of the particular lot in contro-
versy.   The mere fact that certain parties bought cuts
one year and the next year bought the whole of the same
property proves nothing.   There must be some evidence
of an agreement not to bid.   The fact that two bidders
at a sale will not bid against each other does not affect
the sale.   Blackwell on Tax Titles, sec. 569.   (2) On
the trial below defendant, Russell, offered to deed the
land to plaintiff on payment of the taxes, penalties and
interest.   Therefore, defendant, Russell, has no objec-
tions to allowing plaintiff to redeem, but we think the
decree instead of simply declaring the taxes a lien and
awarding a special execution which requires another
sale, should have required plaintiff to pay the amount
of the taxes, penalties and interest to defendant, Rus-
sell, within a specified time, upon the surrender and can-
cellation of the certificate of purchase and deed, and in
default of such payment, that plaintiff's petition be dis-
missed and he be barred of all right to the land.   This

is held to be the correct practice in such cases, by the Supreme Court of Illinois. Farwell v. Harding, 96 Ill. 32; Alexander v. Merrick, 121 Ill. 606. (3) Furthermore, there should have been a personal judgment against plaintiff for the amount as prayed for in the cross petition. Phelps v. Brumback, 107 Mo. App. 25. (4) The only error assigned by appellant in his brief, is that defendant, Russell, is not entitled to a lien for the taxes he has paid. (5) There is no exception made in section 59, giving a ground on which a tax deed may be set aside, and the person claiming the title under it debarred from having his lien for taxes paid. There being no exception in the law, the court is not authorized to write one in it. Of course a valid lien for taxes presupposes a valid assessment for there can be no lien if the assessment was invalid. Burke v. Brown, 148 Mo. 309; Phelps v. Brumback, 107 Mo. App. 16. The validity of the assessment in the case at bar is not attacked on this appeal, so that question is not before the court.

JOHNSON, J.—Action in equity brought by the owner of certain real estate against Lamon Russell and the treasurer of Kansas City to set aside and annul a certificate of purchase and deed issued to Russell by the city treasurer pursuant to a sale of the real estate by the treasurer to enforce the lien of the city for certain back taxes. The ground alleged for the relief prayed was the fraudulent combination of bidders at the sale not to bid against Russell, the purchaser. The court heard the evidence and found there was a fraudulent combination as alleged. Counsel for defendants argue that the evidence does not justify this finding, but we think no other conclusion permissible. It appears beyond dispute that the sale in question was conducted in a method generally pursued in such cases. The bidders attending such sales had an understanding known to the city officers that effectually prevented competition.

Russell was a party to that arrangement and was allowed to purchase and acquire a deed to the property of plaintiff without competition or opposition of any kind. That such practice was a fraud on the rights of plaintiff is a proposition too plain for discussion.

In the decree, the court pronounced the certificate and deed void on the ground of fraud, and we approve that portion of the decree. But the decree does not stop here. The court found that after becoming the purchaser Russell had paid taxes and special assessments against the property which, with interest and penalties, amounted to $693.43, and adjudged "that the plaintiff, Adelbert P. Nichols, holds the legal title to the aforesaid lot subject to the payment to the defendant, Lamon D. H. Russell, of six hundred and ninety-three and 43-100 ($693.43) dollars, that the said six hundred and ninety-three and 43-100 ($693.43) dollars are hereby declared to be a special lien against the aforesaid lot, for the payment thereof, and the defendant, Russell, is entitled to interest thereon at the rate of twenty-four (24) per cent per annum from this date; and the defendant, Lamon D. H. Russell, have and recover from the sale of said lot the sum of six hundred and ninety-thre and 43-100 ($693.43) dollars, together with interest from this date with his costs and that a special execution issue therefor."

Plaintiff appealed from that part of the decree quoted and contends that the taxes paid by Russell though lawfully levied are not a lien on the property for the reason that they were voluntarily paid in furtherance of fraud. In the absence of statute, the purchaser of an invalid tax title can have no lien either for the taxes for the collection of which the sale was made or for taxes subsequently paid by the purchaser. The general rules of law regard the purchaser in such cases as a mere volunteer. [Croskery v. Busch, 116 Mich. 288; 74 N. W. 464.] But in such cases, where the landowner is compelled to resort to a court of equity for relief, the

maxim that "he who seeks equity must do equity" will not suffer him to escape the just burdens of taxation where it appears that the sale and purchase were in good faith, but were invalid on account of some mere irregularity. We sanction the views on this subject expressed by the Supreme Court of California in Harper v. Rowe, 53 Cal. 233, as follows: "If the tax sale was not void, but only irregular in some respects, and if the owner should go into equity to cancel the sale, and to compel a purchaser in good faith to surrender the evidences of his title, it is possible the court would not grant relief except on condition that the purchase money was refunded."

This much we say concerning the rules that obtain in cases where there is no statute dealing with the subject under discussion.

The charter of Kansas City in effect at the time of the transactions in controversy provides (Charter and Revised Ordinances of Kansas City (1898), art. 5, sec. 59), that tax deeds may be set aside on three grounds, viz., 1st: That the taxes were paid before the sale of the property; 2nd: that the property was not subject to taxation; 3rd: that the property had been redeemed from the sale at the date of the deed. And further provides: "If any person claiming title under a tax deed, executed substantially as provided for in the preceding section, shall be defeated in any suit or proceeding by or against him for the recovery of the real property conveyed or purporting to be conveyed by such tax deed, the successful claimant shall be adjudged to pay such person the full amount of all money paid by the purchaser . . . . which judgment shall be a lien upon the real property in controversy."

It will be observed that these charter provisions profess to deal only with cases where the sale is invalid on account of some irregularity or is void because the property at the time was not subject to the taxes for the collection of which the sale was made. In all such cases

the purchaser presumably acting in good faith is given a lien against the property for the taxes paid by him at the sale and subsequent thereto. But the language of the charter is not broad enough to include fraudulent sales in its scope. It is a far cry from a case where the sale and purchase were in good faith, but were invalid on account of some irregularity or mistake and a case where fraud was perpetrated and since the charter does not refer to the latter cases, we must turn to the principles and rules of equity to ascertain whether or not there is any relief for defendant Russell.

The difficulty of his position is that to maintain his right to a lien, he must plant his feet on a certificate and deed tainted with his own fraud. He invokes against his adversary the maxim that he who seeks equity must do equity but is forgetful of the other maxims that "he that hath committed iniquity shall not have equity," and "he who comes into equity must come with clean hands."

Defendant is seeking affirmative relief and he comes not with "clean hands," not as the innocent victim of a mere mistake, but as one who sought to wrong his neighbor. There is no equity for him. It would be a mockery of justice to say that a man when checkmated in his attempt to perpetrate fraud still may recover from the object of his unlawful aggression his outlay in the furtherance of that attempt.

We are aware that the Supreme Court of Iowa in several cases has held that "in cases where tax deeds are set aside for fraud or on other grounds, the holder of the tax title may recover from the owner of the land an amount equal to the sum which would have been necessary to discharge the land from taxes if they had not been paid by the purchaser." [Besore v. Dosh, 43 Ia. 211; Light v. West, 42 Ia. 138; Everett v. Beebe, 37 Ia. 452.]

No reason is given in these cases for what, to say

Nichols v. Russell.

the least, is a strange rule and we know of no other respectable court of last resort that has given sanction to the startlingly immoral doctrine that the unsuccessful fraud feasor may have return not only of what he invested in the fraud, but of a large profit besides. Such a rule would open wide the door to fraud since the fraudulent could play the game with the assurance of a profit of twenty-four per cent a year or better. The Supreme Court of Nebraska in Coble v. O'Connor, 43 Neb. 39, 61 N. W. 131, declares the better doctrine, and we refer to the learned opinion in that case. How much better than the Iowa rule, both in law and in morals is the wholesome principle enunciated in the following excerpt from the opinion of the Supreme Court of Pennsylvania in McCaskey v. Graff, 23 Pa. St. 321:

"But we thought it was settled in Pennsylvania, if not in every other civilized State, that a title procured by means of an actual fraud or a plain and positive deception, was tainted through and through, destitute of all validity, and utterly void in law as well as in equity. Certainly it has been so decided very often here and elsewhere; and though we have examined all the cases cited on the argument, from books within our reach we have found none in which the proposition is denied by any court. Gilbert v. Hoffman (2 Watts 66), ruled the very point now before us in a case precisely like this., Jackson v. Summerville (1 Harris 359), decides the principle with equal clearness. In Riddle v. Murphy (7 Ser. & R. 230), the court, speaking of one who had purchased at a sheriff's sale under a fraudulent judgment to which he was himself a party, said, 'in his character of purchaser he could not claim to be reimbursed, for if the sale was fraudulent, it was a nullity.' To say that a void title can stand as security for purchase money, advances, or anything else, is a contradiction in terms. It falls like an empty sack, because it has nothing to support it and cannot support itself. The proposition that one who is detected in a cheat by which he has ac-

quired no title, shall, nevertheless, be placed on the footing of one who has a good title, unless the money he expended in the perpetration of the fraud be paid to him by the injured party, shocks our sense of right as much as it violates the analogies of the law."

Defendant says in his brief: "The policy of the law is to get the money which the municipality needs to carry on its government and which it has levied, as taxes. There would be few purchases at tax sales if a purchaser stood a chance to lose all he paid, as appellant is contending for in this case. . . . Hundreds of titles and many thousands of dollars are held in abeyance awaiting this decision. If the settled construction given to this charter provision for many years is to be overturned then future tax sales by the treasurer will amount to but little for no one will buy."

We think counsel do not appreciate the logical result of this argument. Under the law, the officers of the city are charged with the duty of protecting its revenues by honest methods, but in their zeal they have no right to pursue or countenance fraudulent practices. Neither an individual nor a collection of individuals may enter into partnership with wrongdoers and be free from guilt. If the city government cannot collect its revenue without being a party to fraud the city would better surrender its charter and go out of business.

Further, defendant contends it is unjust that plaintiff—himself guilty of a breach of civic duty in not paying his taxes—should escape his share of the public burden discharged by taxpaying citizens. That is true, but it is an inevitable consequence of the situation brought about by the fraud of defendants. Frequently it happens that the intended victim of fraud derives a profit from the transaction to which he is not entitled. The law permits him to retain that profit, not out of any desire to reward him, but because his culpable adversary has placed himself beyond the pale of equity. The rules of equity proceed on the idea that the contriver of

fraud who "goes for wool should come back shorn." What he puts out in fraud is lost to him forever, though it goes to enrich him who, but for the fraud, would have no right to claim it.

The judgment is affirmed as to the part which adjudges the certificate and deed void, and reversed as to the part that decrees a lien in favor of defendant Russell. All concur.