## BREWER v. FOLSOM BROTHERS CO.
(No. 1697; Nov. 24, 1931; 5 Pac. (2d) 283)

434

The cause was submitted for the appellants on the brief of *William C. Snow*, of Basin, Wyoming.

The cause was submitted for the respondents on the brief of *Ernest J. Goppert,* of Cody, Wyoming.

BLUME, Justice.

The taxes on the SW¼ of tract 97 in Sec. 8, T. 52 N., R. 96 in Big Horn County, Wyoming, were delinquent for the year 1924 and the land was struck off to the county as provided by law. On November 2, 1927, the county, pursuant to statutory authority, sold the land to Madeline Brewer, plaintiff in the case and respondent here. The purchase price was $2092.38, which included all the delinquent taxes against the land for the years 1923, 1924, 1925, 1926, and the taxes due for 1927. A deed was issued to the purchaser by the board of commissioners. Separate tax receipts were issued to the purchaser showing that she paid the taxes for the various years above mentioned. In the month of November, 1927, the tax purchaser, relying upon the validity of the tax deed, went into possession of the land, made various improvements thereon, and paid an irriga-

tion ditch assessment in the spring of 1928. On February 13, 1928, Folsom Brothers Company, a corporation, the then owner of the land, brought an action for the recovery of the property and was successful therein, as shown by judgment entered in the case on July 9th, 1928. No claim was made in that action for taxes, ditch assessment or improvements above mentioned. Thereafter—the exact time not appearing—Arnott R. Folsom became the owner of the property. The present action was commenced in December, 1928, the plaintiff asking to recover the taxes and ditch assessment paid and the value of the improvements put on the land. Issues were duly joined in the case, and judgment was entered in favor of plaintiff for the amount claimed, and for a lien against the land. From the judgment the defendants have appealed.

1. A motion to dismiss was filed herein by the respondent on the ground that the abstract of record fails to show (1) an entry of the judgment in the case and (2) any service of the notice of appeal, and (3) fails to contain any assignments of error. The appellant, realizing that he had violated the court's rule in at least one respect, thereupon asked to be permitted to add the assignments of error to the abstract, and sent them to the clerk of this court. No correction in the abstract in other respects was made. Rule 37 of this court provides that the abstract of record "shall contain a brief statement of the contents of the pleadings, the judgment, the motion for a new trial, the assignments of error relied on, and such other parts of the record as may be essential." The respondent is, by the same rule, permitted to file amendments to the abstract, and it is further provided that "in case of failure to comply with the provisions of this rule, the court may dismiss the case or tax costs as the right of the matter may require." In this state the original record comes to this court, and in this case shows no defects. The abstract of the record is furnished for the convenience of the court. We think that it should show the things essential to give this court juris-

diction. But it is not necessary to apply the drastic rules applied by some of the courts when these matters are not shown thereby, but are shown by the original record. The case will not be dismissed on the grounds of the motion, but, particularly in view of the fact that the foregoing rule has not been in force long, and has not heretofore been construed, costs will be taxed to the appellants in accordance with the rule, in an amount to be fixed by the court.

2. For the sake of convenience we shall first consider the subject of recovery for the improvements made. Our statute on the subject is as follows:

§ 6240, Wyo. C. S. 1920. "Parties in an action for the recovery of real property may avail themselves, if entitled thereto, of the benefits of the statutes for the relief of occupying claimants of land."

§ 6241. "A person in the quiet possession of land or tenements, and claiming to own the same, who has obtained title to and is in possession of the same, without fraud or collusion on his part, shall not be evicted or turned out of possession by any person who sets up and proves an adverse and better title, until the occupying claimant, or his heirs, are fully paid the value of all lasting and valuable improvements made on the land by him, or by the person under whom he holds, previous to receiving actual notice by the commencement of suit on such adverse claim, whereby such eviction may be affected, unless such occupying claimant refuse to pay to the person so setting up and proving an adverse and better title, the value of the land, without improvements made thereon as aforesaid, upon demand of the successful claimant, or his heirs, as hereinafter provided, when:

1. Such occupying claimant holds * * *

4. Under a sale for taxes authorized by the laws of this state; * * *."

§ 6243: "The court rendering judgment against the occupying claimant, in any case provided for by this article, shall, at the request of either party, cause a journal entry therefor to be made," etc. (probably referring to the demand for the value of the improvements.)

The Code further provides for the selection of a jury to appraise the improvements made, and for the consequences of non-payment of the amount so fixed.

The statute, accordingly, makes provision for a proceeding which, while in a sense independent of the main action, yet is in connection with it and a part thereof. That necessarily follows from the fact that the judgment in the main action cannot be enforced until the claim for betterments, if made, has been settled. The proceeding for the assessment of the value of the betterments is not a separate action. The statute gives what we may call a right of retention. That right played an important part in the Roman law. It is not unknown to our own law in a number of other instances. Thus attorneys, agistors, stable keepers and others have such right; but when possession has once been relinquished the claim to any equity in the property is lost. Notwithstanding our statute, respondent seeks to recover in an independent action. Under the rules of the common law that was not permissible. In an action at law no allowance could be made for such betterments, unless mesne profits were asked, either in the action for the recovery of the land or in a separate action, and then the value of the betterments could be set off only against the mesne profits. Anderson v. Reid, 14 App. Cas. D. C. 54, 70; 31 C. J. 313-315; Sutherland on Damages, (4th Ed.) Sec. 999; Thompson on Real Property, Sec. 4890. And that appears still to be the rule in most states in the absence of a statute. In courts of equity, where plaintiff sought equitable relief, betterments made could be required to be compensated on the ground that he who seeks equity, must do equity. In 1841, however, Justice Story, in the celebrated case of Bright v. Boyd, Fed. Cas. No. 1, 875, 1 Story 478, Fed. Cas. No. 1876; and 2 Story 605, went much farther, and his holding has since been followed by several other courts, including Kentucky, though not followed by the larger number of courts. 31 C. J. 315. He held that where a holder in good faith is defeated in an action of

ejectment on account of invalidity of his title, he may thereafter bring an independent action in equity and recover for his betterments to the extent that the value of the land is enhanced thereby. He based his decision on what he conceived to be the principles of the civil law. Great jurist that he was, versed not only in the common law but in the civil law as well, his citations, nevertheless, from the Roman law, namely, Inst. 2, 1, 30 and 32; D. 6, 1, 38 and 65; D. 20, 1, 29, 2, are not happy, for they all deal with the right of retention against one who sought to recover the property. In exceptional cases, some of the Roman jurists gave both the right of retention as well as a right of action for useful or necessary expenditures. D. 25, 1, 5, 2; D. 5, 3, 50. But the rule was distinctly otherwise in a case like that at bar. Thus it is said in Inst. 2, 1, 30, cited by Justice Story:

"If the builder of the house has possession of the land, and the owner of the latter claims the house by real action, but refuses to pay for the materials and the workmen's wages, he can be defeated by a plea of fraud, provided the builder's possession is in good faith."

Justinian Code, 3, 32, 11, 1 and 3, 32, 16, states the law in the same way. D. 12, 6, 33 deals with building on another man's ground, and it is stated that "the only way in which he (the builder) could make sure of recouping the cost he incurred, would be by keeping the property in his hands." More specific is D. 6, 1, 48, which would seem to relate to all useful and necessary expenditures, including necessary taxes paid. It states:

"When a possessor in good faith has incurred expenses in connection with a piece of land, which is shown to belong to another, he cannot sue to recover them from the person who gave it to him or from the owner. But if he interposes the plea of fraud (in the action to recover), then upon principles of equity, he will be allowed these expenses by the judge, by virtue of his office, if they exceed the profits which he received before joinder of issues."

Here, clearly, only the right of retention was given, just as under our statute. Justice Story, accordingly, in Bright v. Boyd, followed neither the common law nor the Roman law. It is true, of course, that if he was to apply the latter at all, he could not follow it strictly. Under Roman law both equity and law could be administered in the same action. There was no rule that equity could not be administered in an action at law in the sense in which that rule has been applied by our common law courts. But courts of equity were distinct from courts of law in the time of Justice Story, even though presided over by the same man. That is not true to the same extent today. "The line between law and equity has been more or less obliterated in the past. * * * Courts have numberless times announced that rules of equity and of law may be applied in the same action." Holly Sugar Corporation v. Fritzler, 42 Wyo. 446, 296 Pac. 206, 214. In any event the legislature has specifically provided that a claim for betterments—which, of course, rests purely on equitable principles—may be interposed in an action at law to recover the land. And if, accordingly, we apply the Roman law (from which our principles of equity are derived—Anderson v. Reid, supra) to the case at bar, we are constrained to hold that respondent slept on his rights and is not now in position to recover. It may be argued that whether allowance for betterments is made by claim in the action to recover the land, or by an independent action, is merely a mode of procedure, and of no particular moment. We are not sure of that. Ordinarily at least it would be much better to settle rights in and to the land, including the question of betterments, in one action rather than in two. Furthermore, if a separate action were permissible, the ordinary provisions of the statute of limitations would apply, and the owner might have to wait for nearly ten years to find out whether or not he would be held liable for betterments. That this would not be conducive to the administration of justice must be clear.

However that may be, we think that we must hold against respondent on another ground. Our law relating to occupying claimants, permitting them to claim compensation for improvements, was passed in 1886 (c. 60). That law was taken from Ohio, as is well known, and our adoption included, of course, the interpretation that had been placed upon the act by the Ohio courts. The Supreme Court of that state held in 1828, in Adm'r. of Winthrop v. Huntington, 3 Ohio 327, 17 Am. Dec. 601, that a person entering land under color of title, paying taxes and making improvements as owner, who is ejected at law, cannot sustain a bill in equity for compensation and reimbursement against the rightful owner. This holding was followed in the case of Schroll v. Klinker, 15 Ohio 153, decided in 1846. And in Raymond v. Ross, 40 O. S. 343, decided in 1883, the court held that unless a man in the possession of the property of another makes a claim for taxes paid and improvements made on the land in the action brought for the recovery of the land, he is barred. Under a similar statute, the Iowa Supreme Court came to the same conclusion. Webster v. Stewart, 6 Iowa 401; Claussen v. Rayburn, 14 Iowa 136; and see Lemerand v. Flint, 117 Mich. 309, 75 N. W. 763. It is clear, accordingly, that the respondent's claim in this action for improvements cannot be upheld.

3. We shall next consider the question of taxes. It is generally held that where the owner of the land sued in equity for affirmative relief, he may, as a condition for relief, be required to reimburse one who in good faith has acquired a tax title and has paid subsequent taxes on the land, on the principle that he who asks equity must do equity. Holland v. Hotchkiss, 162 Cal. 366, 123 Pac. 258, L. R. A. 1915 C 492, and authorities cited; Nowler, et al. v. Coit, 1 Ohio 519, 13 Am. Dec. 640. It may be that the same rule should be applied where a man brings an action in ejectment, for success in that action in effect, in the language of the California case just cited, invalidates the tax sale or deed. That the right of retention existed in such

case under the civil law is clear from the citations set forth
above. Probably Hopkins v. Daunoy, 33 La. Ann. 1423, is
to that effect. That rule seems to have been applied without
a statute on the point in McInerney v. Beck, 10 Wash. 515,
39 Pac. 130. Cases may be found the other way, but these,
perhaps, are based on the former rule that equity may not
be administered in a court of law. That is not true in our
state. Allen v. Houn, 30 Wyo. 186, 219 Pac. 573; Powers
v. Armstrong, 36 O. S. 357. Under our statute "the de-
fendant may set forth in his answer as many grounds of
defense, counterclaim and set-off as he has, whether they
are such as have been heretofore denominated legal or
equitable, or both." The point, however, is not involved
herein, and we need not decide it. In this instance respond-
ent did not seek to enforce any right of retention when the
action of ejectment was brought, but he sat idly by, per-
mitted the land to be recovered, and he now seeks to re-
cover the taxes paid by him in an independent action. Is he
permitted to do that?

Counsel cite 26 R. C. L. 436, which states as follows:

"It is held in some states that on general equitable prin-
ciples the purchaser at a void tax sale is entitled to recover
of the owner so much of the purchase price as was sufficient
to pay the tax upon the property. In other states, however,
it is held, that, in the absence of a special statute, the pur-
chaser at a void tax sale has no right either at law or in
equity to reimbursement from the owner of the property.
But as a general rule such right is given by statute. The
same result has been reached by statutes making the tax
lien perpetual and only to be discharged by payment of the
tax in full, and if the tax title proves invalid by reason of
some defect in the proceedings the lien is transferred to the
holder of the tax title defective though it may be and all the
rights of the state pass to him, so that he may remedy the
defect in his title by foreclosing his lien by appropriate
judicial process. The remedy of the purchaser at the tax
sale against the owner of the property is wholly statutory
whichever method is adopted, and unless his case comes
within the precise language of the statute he will be denied
relief."

Counsel interpret the text as laying down the rule that when a perpetual lien is given the state for taxes (as in our state), the tax purchaser is subrogated to the rights of the state. Counsel have evidently misinterpreted the text. It cites Downing v. Lucy, 121 Minn. 301, 141 N. W. 183. But that case shows that the relief granted the purchaser is based upon a statute providing that if the tax certificate is adjudged void, the lien of the state shall be transferred to the purchaser. We have no such statute. The first part of the text, stating that in some states the purchaser at a void tax sale is entitled to recover, cites note to 42 A. S. R. 589. The only cases cited in that note which have any bearing herein are Hopkins v. Daunoy, supra, and Fishel v. Mercier, 37 La. Ann. 356. In the former of these cases the owner of the land sued the tax purchaser who was in possession of the property, to annul the tax sale and to recover the property. The court held that as a condition precedent to the right of recovery, the owner should reimburse the tax purchaser for the amount of taxes paid. This case is, accordingly, not in point here. The other Louisiana case holds that a tax purchaser, who has been defeated in his action to recover the land from the owner, is entitled to sue in an independent action and recover a personal judgment against the owner for the amount of the taxes paid. Two of the five judges sitting in the case dissented. It is distinctly opposed to the rule of the Roman law, which gave only the right of retention as heretofore shown. The case apparently stands alone (in the absence of a statute) and under the circumstances we should not feel warranted in basing the decision herein upon the authority of that case. Furthermore, the land in the case at bar passed through five different hands from 1923 to 1927; the defendant Folsom Brothers Company became owner apparently only in 1926, and the defendant Arnott R. Folsom only in 1927, so that a personal judgment against these defendants for taxes for years during which they were not owners would seem to be harsh, unless clearly warranted under the law. Counsel

have cited, and quoted from, a great mass of other cases and authorities, none of which, so far as we have been able to discover, are in point herein. They cite us, for instance, to 37 Cyc. 1152, which states that a person, who in good faith and under color of title claims to be the owner of real property, may pay taxes thereon and if his claim of title is subsequently defeated, he is entitled to reimbursement from the true owner. None of the cases cited thereunder relate to tax titles, except Denoyers v. Dennison, 10 Ohio Cir. Dec. 420, which merely follows Nowler, et al. v. Coit, supra, and is not in point here. Tax titles rest upon the rule of *caveat emptor,* and cases not involving such titles could at best be of value only to show that tax titles should not be treated any differently than any others, but relief in connection with them has generally been considered solely within the province of the legislature.

The respondent herein asked a personal judgment against the defendants for the taxes paid, basing her claim of recovery, however, mainly on the theory that the tax purchaser succeeds to the lien of the state or county. The rule seems to be the same whether a personal judgment is sought or whether a lien is claimed—there must be a statute authorizing either, and that we do not have. A list of states in which a statute has been passed permitting relief in one mode or another in case a tax title proves to be defective is contained in 12 Ann. Cas. 230-233.

Cooley, on Taxation (4th Ed.), the pre-eminent authority on the subject with which he deals, states in Section 1553:

"The tax purchaser buys under the rule of *caveat emptor,* and under common law rules would get nothing unless he got the land itself. In the absence of an express statute, if the tax title proves to be worthless, the tax purchaser cannot recover the money paid by him either against the officer, the owner of the land, or the tax district which collected and used the tax; and this is so even though the taxes were lawfully assessed and were paid by his purchase. So the purchaser cannot recover subsequent taxes

on the land paid by him. Furthermore, if a tax sale is void, the payment of the tax stands on the footing of a voluntary payment, not made at the request of the owner of the land, and which a court of equity will not require him to refund.''

The Supreme Court of Colorado, in the case of Mitchell v. Town Co., 41 Colo. 367, 92 Pac. 678, said in part:

''It is well settled that the maxim *'caveat emptor'* applies to the purchaser at a tax sale; and, if he fails to secure good title to the property he attempts to purchase because of the invalidity of the tax sale, he cannot recover the amount paid therefor unless some statute in terms provides such remedy. We have no such statute; but, on the other hand, the manner in which taxes legally levied shall be collected and the realty subjected to the payment of such tax is specifically provided by our statute. Richardson v. City of Denver, 17 Colo. 398, 401, 30 Pac. 333; Larimer County, v. Nat. Bank, 11 Colo. 564, 567, 19 Pac. 537; Montezuma Valley W. S. Co. v. Bell, 20 Colo. 175, 177, 36 Pac. 1102. In Richardson v. City of Denver, supra, Chief Justice Hayt, speaking for the court, said: 'The payment made was entirely voluntary. Richardson bought for purely speculative purposes. He took the chances and must abide by the consequences, unless he can find some statute authorizing the recovery of the money paid. If his venture had proven fortunate, he might have secured a very valuable property for a small sum of money. In any event, he had ample means of ascertaining the validity of the proceedings under which he purchased, and it must be assumed, under the circumstances, that he bought with full notice of the illegality of the same. A purchaser at a tax sale from one who is not the owner of the property comes strictly within the rule of *''caveat emptor.''* ' ''

In the case of Holland v. Hotchkiss, supra, the Supreme Court of California says:

''If the purchaser, claiming title under his tax deed, sues for possession of the land, or if, perceiving that the deed is invalid, he sues the owner to recover the tax paid, as money paid to his use, the general rule is that he cannot prevail, that the rule of *caveat emptor* will be strictly applied

against him, that a proceeding to assess and collect taxes creates no contract by the owner to pay the tax assessed, and that the law will not imply a contract by the owner to refund such tax to one who has paid the same upon a tax sale which is void, and this is true in cases where the tax was legally assessed but the proceedings to sell defective, as well as where the assessment, itself, is unauthorized and void, or where the tax has been previously paid."

In the case of Joliet Stove Works v. Kiep, 230 Ill. 550, 12 Ann. Cas. 227, 82 N. E. 875, 877, the court said:

"It is urged by the appellant that said sections of the statute should not be construed so as to permit a suit to be brought to recover taxes paid by a purchaser, or one holding under him, if it appears a tax deed has issued upon the sale, as it is said the doctrine of *caveat emptor* is applied to a tax purchaser, and if he fails to get title to the land he should be held to get nothing, and to lose the money invested in the tax title, or to protect his interest therein. Such undoubtedly was the common law and would be the law of this state governing the case were it not for the sections of the statute above quoted. We think, however, those sections of the statute must be held to control in the decision of this case."

The authorities denying a lien, in the absence of a statute, are quite numerous. Cooley, supra, Section 1556, states:

"Unless legislation in terms give it, the purchaser will have no lien upon the land for the sum paid on the purchase nor for taxes subsequently paid by him."

In 37 Cyc. 1531, the rule is stated thus:

"A mere purchase of land at a tax sale gives no lien enforceable in equity for the reimbursement of the money paid; but where the tax title proves defective, the statutes of many states now create a lien in favor of the purchaser for the amount of the price paid, or to the extent of the taxes paid, either generally or in special cases."

In O'Connell v. Sanford, 256 Ill. 62, 99 N. E. 885, 886, the court said:

"The effect of a sale of lands for taxes is to extinguish the lien if the property brings the amount of the taxes. The lien only exists in favor of the people and is discharged when the tax is paid by the sale. There is no way by which the purchaser at a tax sale can avail himself of the extinguished lien of the state when his tax title fails."

To the same effect is City of Chicago v. Collin, 302 Ill. 270, 274, 134 N. E. 751. In Nichols v. Russell, 141 Mo. App. 140, 143, 123 S. W. 1032, 1033, the court stated that "in the absence of statute, the purchaser of an invalid tax title can have no lien either for the taxes for the collection of which the sale was made, or for taxes subsequently paid by the purchaser. The general rules of law regard the purchaser in such cases as a mere volunteer." And in Burkham v. Manewal, 195 Mo. 500, 508, 94 S. W. 520, 521, the court uses the following language:

"Appellant thinks that as he has paid taxes on this land, he ought to be subrogated to the rights of the state and have a lien declared for the amount of his outlay. At the time appellant paid these taxes there was no law in this state giving him a lien on the land for any such purpose. * * * There was no such relation between him and the plaintiff as would suggest the idea that he was paying the taxes at the request or for the benefit of plaintiff. The contrary appears; he was aiming to help himself only. One who, unsolicited, and with no interest of his own to protect and no obligation to do so, pays the taxes due on the lands of another is a mere volunteer and acquires thereby no right as against the owner."

So in the case of Flinn v. Parsons, 60 Ind. 573, and Stephenson v. Martin, 84 Ind. 160, it was stated that "the remedy for purchasers at invalid tax sales or holders of invalid tax deeds is wholly statutory." The Supreme Court of New Mexico in Blackwell v. Bank, 10 N. M. 555, 63 Pac. 43, 46, says:

"We do not deem it necessary in this case to discuss how far the legislature may attempt to enact retrospective legislation for the purpose of creating liens in favor of a purchaser at a void tax sale which he did not have by virtue of a statutory enactment at the time of the sale. All the authorities hold that no such lien exists in favor of a purchaser except by virtue of a statute. * * * We do not doubt that it is competent for the legislature by statute to give a lien to purchasers at void tax sales for the money paid by them upon the property attempted to be sold, but we do not believe that such a lien can be created by retrospective legislation."

The Supreme Court of Minnesota has several times had occasion to refer to the question here under consideration, and it too recognizes the rule that in the absence of a statute a holder of a tax title, or tax certificate, has no lien. Barber v. Evans, 27 Minn. 92, 6 N. W. 445, 446; Jenks v. Henningson, 102 Minn. 352, 113 N. W. 903; Byers v. Loan Co., 118 Minn. 266, 136 N. W. 880. In the Barber case the court uses the following language:

"The rights of a purchaser at a tax sale which proves to be invalid and ineffectual to pass any estate in, or legal title to, the property, are such only as are given by statute. In the absence of any statute upon the subject, he acquires no lien upon the land for the amount of the purchase-money, in case his title proves fatally defective, nor has he any legal claim upon the state for the reimbursement of his money. Neither is he entitled to be subrogated to whatever rights the state may have in respect to the collection of any taxes already legally assessed against the land, or for the re-assessment and collection of such sums as the land ought equitably to pay."

In Ross v. Mabry, 1 Lea (69 Tenn.) 226, the tax purchaser, not yet having acquired a tax title, came into court and wanted to have a lien declared for the taxes paid. The discussion is interesting, the court saying in part:

"It is difficult to see how a lien can be created by the purchase, without more. The rule of *caveat emptor* seems

to apply to tax sales. Packard v. New Limerick, 34 Me. 266. The purchaser, it has been held, has no remedy against the collector for neglecting to do properly some act essential to the validity of the sale—such as failing to give the purchaser notice. Hamilton v. Valient, 30 Md. 139. Nor against the county or town. Lynde v. Melrose, 10 Allen 49. Nor against the owner of the property sold. Heart v. Henderson, 17 Mich. 218. These are harsh rules to apply in a case where the tax was just and legal, but the proceedings to make it a charge on the tax-payers' property are void. The purchaser in such a case has paid money for the use of the property owners, and ought in good conscience to be reimbursed. But, as has been said by Judge Cooley, it is difficult to perceive how any equitable claim can exist against any one for the cost of void proceedings. Cooley on Tax., 375, note. And, at any rate, in the present state of the law we know of no principle upon which the recovery can be put. If, indeed, the lien of the State, county or corporation could be considered as assigned to the purchaser, or kept alive for his benefit, until merged in the legal title by recovery of the land on the tax title, and this would seem to be in the competency of the Legislature, redress might be had.''

In the case of Shaw v. Morley, 89 Mich. 313, 50 N. W. 993, it appeared that complainant, whose tax title was invalid, had paid taxes on the land for the period of sixteen years. There was then no statute in Michigan giving a tax purchaser any relief. The statute subsequently passed was held not to apply, and that the complainant was not entitled to any relief. That liens are purely statutory was also recognized in the case of Nester v. Busch, 64 Mich. 657, 31 N. W. 572.

We have already referred to the case of Adm'r. of Winthrop v. Huntington, 3 Ohio 327, 17 Am. Dec. 601, in which, after an action in ejectment had been terminated, the tax purchaser sought relief in an action in equity, which was denied him. The same kind of case was Croskery v. Busch, 116 Mich. 288, 74 N. W. 464, where the court reviews the subject quite at length, saying in part:

"We have been to some trouble to collect and examine the cases which permit the purchaser to recover the tax from the owner where his title fails. Some of them are cases where, on a bill to quiet title, payment of the taxes was made a condition of relief. * * * (Jenkins v. Auditor General, 104 Mich. 34, 62 N. W. 163). Such holding rests upon the maxim that 'he who seeks equity must do equity,' and is not necessarily conclusive in a case where a suit is brought to declare and enforce a lien, as in this case. While in a number of States the purchaser at an irregular sale is permitted to recover the amount paid, where the sale is declared illegal, an examination shows that in nearly, if not quite, all of them, statutes are the foundation for the relief. This will be found true in Nebraska, Arkansas, Mississippi, Indiana, and Kansas. * * * As against this apparent uniformity, we are cited to no case which sustains the proposition of the complainants; * * * Thus it seems that this lien in the hands of the State could not be enforced in equity, and a statute was necessary to enable the State to enforce its existing lien. Could an assignee of the State be in any better position in this respect? This is but a recognition of the doctrine that taxes are not matters of contract, and that only statutory measures are to be resorted to for their collection. Cooley, Tax'n. (1st Ed.) 300; Id. (2nd Ed.) 15, 16; Eyke v. Lange, 104 Mich. 26, 63 N. W. 535. It is manifest that the subsequent payment of taxes was voluntary, and cannot be recovered. Many of the States have provided by statute that the purchaser shall acquire the lien of the State, and may enforce it if title fails. These are statutory provisions in the furtherance of justice, and it is to be regretted that they have been dropped from our statutes."

In Alabama, the statute provided that the tax purchaser should have the lien of the state which it had upon the sale thereof. The court held in Sheffield City Co. v. Bank, 131 Ala. 185, 32 So. 598, and Tradesmen's Nat. Bank v. Sheffield City Co., 137 Ala. 547, 34 So. 625, 627, that the lien given by statute was limited to the year for which the taxes were sold and gave no lien for any other taxes paid, thus clearly recognizing the rule that a tax lien given a tax purchaser is purely statutory. In the latter case the court said in part:

"For the taxes for years subsequent to 1893, voluntarily paid by complainant, as has appeared, it had, and acquired no lien. There had been no sale of the property by the State to enforce its tax lien on the property, and the defendant acquired none by way of assignment from the State. The State and county's liens were extinguished when the complainant went forward and paid the taxes for these years. It is not shown that defendant ever agreed to pay these taxes, or became in any wise obligated to do so, as surety or otherwise. The taxes assessed against the lands for the years subsequent to their sale in 1894, were assessed, or given in for taxes by the complainant for itself, and not as agent of the defendant, or by virtue of any relation between the two, and so far as defendant was concerned, as to these matters, the complainant was a mere volunteer. The payments were made, not for or on account of defendant because of any supposed interest, or on account of any lien or incumbrance on the land with which defendant had any connection. Indeed no lien existed. Foster v. Trustees, 3 Ala. 302; Newbold v. Smart, 67 Ala. 329; Allen v. Gaylor, 120 Ala. 252, 24 So. 512, 74 Am. St. Rep. 31; Faulk v. Calloway, 123 Ala. 326, 26 So. 504; Gray v. Denson, 129 Ala. 406, 30 So. 595; Motes v. Robertson, 133 Ala. 630, 32 So. 225. We have not been shown, nor are we able to discover, upon what principle the doctrine of subrogation contended for can, under the facts of the case, be here invoked and applied.''

See also Greenwood v. Adams, 80 Cal. 74, 21 Pac. 1134; Cogburn v. Hunt, 56 Miss. 724; Cogburn v. Hunt, 57 Miss. 681; Smith v. Blackiston, 82 Iowa 240, 47 N. W. 1075.

This array of authorities, substantially unanimous, clearly points out what the decision herein must be. We recognize the fact that no man should be unjustly enriched at the expense of another. And every one should pay his taxes. So we had hoped that we could find a way to affirm the judgment herein. But we have been unable to do so. Equity follows the law. Holly Sugar Corporation v. Fritzler, supra. Even though we may hate to deny what we conceive to be a just claim, yet when the law is clear, as it is in this case, we cannot by our fiat annul it. Courts, while unquestionably aiding, as they should, in developing the

454

law by interpretations placed upon it as cases arise, and, as a result, frequently modifying at least what appears to be the law, are not the makers thereof. They cannot usurp the functions of the legislature, a coordinate branch of the government. Mere matters of procedure stand upon somewhat different footing. Matters relating to taxation, to taxes, and to tax titles, however, are particularly within the special province of the legislature, and since it has heretofore refused to follow the example of a number of other states in granting relief in cases like that before us, there is but one result possible in this case, and that is that the respondent cannot recover herein. We need not separately discuss the question of the ditch assessment paid, since that is governed by the principles already discussed.

The judgment of the trial court is accordingly reversed, and the cause remanded with directions to dismiss the petition.

*Reversed and Remanded.*

KIMBALL, Ch. J., and RINER, J., concur.